854 P.2d 873

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Andrew AFFSPRUNG, Defendant–
Appellant.**

No. 14027.

Court of Appeals of New Mexico.

April 26, 1993.

Certiorari Denied June 14, 1993.

Tom Udall, Atty. Gen., Margaret Mc-Lean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

### OPINION

BLACK, Judge.

Defendant appeals the trial court's order denying his motion to suppress. Following the denial of his motion to suppress, Defendant filed an application for interlocutory appeal. The issue on appeal is whether, following a brief visual inspection of a vehicle and limited questioning regarding the occupant's residency and citizenship at a fixed immigration patrol checkpoint near the border, further detention may properly be based on reasonable suspicion of criminal activity. We hold reasonable suspicion is the proper standard, and affirm.

STANDARD OF REVIEW

We view the evidence elicited in the light most favorable to sustain the trial court's finding that the seizure was lawful. *State v. Bolton,* 111 N.M. 28, 801 P.2d 98 (Ct.App.), *cert. denied,* 111 N.M. 16, 801 P.2d 86 (1990); *State v. Boeglin,* 100 N.M. 127, 666 P.2d 1274 (Ct.App.1983). Furthermore, as the reviewing Court, we must indulge all inferences in support of the ruling and disregard evidence to the contrary. To the extent the witnesses' testimony differs as to the facts, as it does in this case, it is the trial court's prerogative to determine the credibility of the evidence. *See United States v. Prichard,* 645 F.2d 854 (10th Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110 (1981). However, whether the facts are sufficient to satisfy the appropriate standard is a legal question. *State v. Jones,* 114 N.M. 147,

835 P.2d 863 (Ct.App.), *cert. denied,* 114 N.M. 62, 834 P.2d 939 (1992).

■ We disagree with Defendant's contention that any facts elicited at the preliminary hearing cannot be considered by this Court as the record developed in this case. At the hearing on the motion to suppress, defense counsel played substantial portions of the tape from the preliminary hearing to refresh border patrol agent David Garza's recollection. Defense counsel also cross-examined Agent Garza at length regarding his previous testimony at the preliminary hearing. To the extent that defense counsel played the preliminary hearing tape, and that Agent Garza was cross-examined regarding his prior testimony, such questioning and references to the prior preliminary hearing testimony are a part of the testimony in this case. *Cf. Green v. State,* 223 Ark. 761, 270 S.W.2d 895 (1954) (recognizing the distinction between admitting the transcript of previous testimony and incorporating questioning using prior transcribed testimony to impeach). We therefore may consider any preliminary hearing testimony insofar as it was brought to the attention of the district court at the hearing on the motion to suppress and incorporated in this record.

FACTS

Defendant was stopped at a fixed immigration patrol checkpoint outside Alamogordo, at approximately 9:00 p.m. Although his testimony varied somewhat, Agent Garza testified he smelled alcohol very early in his encounter with Defendant. It was not apparent to the immigration agent whether the odor came from Defendant's person or from the vehicle. Agent Garza proceeded to question Defendant regarding his citizenship and residency status and was satisfied Defendant was a U.S. citizen. Although Defendant seemed "pretty relaxed" and "kicked back," Garza observed that Defendant was avoiding eye contact. It did not, however, appear to Agent Garza that Defendant was intoxicated or impaired. Agent Garza then asked Defendant where he was coming from, where he was going, and to whom the vehicle, a 1983 Cadillac, belonged. Agent Garza thought that Defendant looked too young to be driving that type of vehicle and was concerned that it might have been stolen. Agent Garza indicated that he made the inquiries beyond Defendant's citizenship and residency because of the time of night, the lack of visible luggage, and the odor of alcohol. According to Agent Garza, it was standard policy to ask origin, destination, and ownership questions when a driver is suspected of some type of criminal activity. Agent Garza was generally satisfied with Defendant's responses, but did not believe that the vehicle belonged to Defendant's grandmother.

Agent Garza then asked Defendant if he could look in the back seat of the vehicle. (Agent Garza later testified that he thought he might find empty beer cans under the car seats, resulting in an open-container violation.) Defendant consented and unlocked the car door with the electronic door-opener. Agent Garza then opened the back car door, leaned into the back seat area, and immediately smelled what he perceived to be burnt marijuana. Garza asked Defendant if he had been drinking. Defendant admitted having consumed two beers. Although Garza believed the odor to be stronger than that produced by two beers, no beer cans were found in the back seat. All of the foregoing took place at the primary inspection area within approximately three minutes.

Based on what he perceived to be the smell of burnt marijuana, Agent Garza referred Defendant to the secondary inspection area. Defendant, the vehicle, and the vehicle's trunk were searched. Agents found a cellophane package of raw marijuana under the front seat of the vehicle. In Defendant's pocket, agents found a rolled, but unlit, marijuana cigarette, and rolling papers in a cigarette box. Defendant was then arrested.

THE STANDARD FOR ROUTINE BORDER AREA QUESTIONING

■ Brief stops for routine questioning conducted at permanent checkpoints need not be authorized by a search warrant. *United States v. Martinez–Fuerte,*

428 U.S. 543, 566, 96 S.Ct. 3074, 3086–87, 49 L.Ed.2d 1116 (1976). Indeed, brief stops at fixed immigration checkpoints for limited inquiry into citizenship and visual inspection of vehicles are constitutionally acceptable even without any individualized suspicion of wrongdoing. *United States v. Sanders*, 937 F.2d 1495 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992); *State v. Estrada*, 111 N.M. 798, 810 P.2d 817 (Ct.App.1991). These more lenient standards also apply to permanent checkpoints staffed by Immigration and Naturalization Service personnel, such as that involved in the present case, which are close to, but not directly on, the national border. *United States v. Martinez–Fuerte; see also United States v. Benitez*, 899 F.2d 995 (10th Cir.1990); Leonard B. Mandell & L. Anita Richardson, *Lengthy Detentions and Invasive Searches at the Border: In Search of the Magistrate*, 28 Ariz.L.Rev. 331, 345 (1986).

Defendant acknowledges his initial detention at the primary checkpoint was legal. He makes two basic arguments: (1) extended detention must be justified by probable cause, rather than merely reasonable suspicion, and (2) even if this Court adopts a reasonable suspicion standard, Agent Garza lacked sufficient basis to form a reasonable suspicion that a crime had been committed in this case.

## ONLY REASONABLE SUSPICION, NOT PROBABLE CAUSE, WAS REQUIRED

▆▆▆▆ "Probable cause" exists when facts and circumstances within the officer's knowledge or on which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense has been, or is being, committed. *State v. Copeland*, 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct. App.), *cert. denied,* 104 N.M. 702, 726 P.2d 856 (1986). "Reasonable suspicion" requires only articulable facts, focusing on a particular person, place, or thing as judged by a reasonable, experienced law enforcement agent. *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *State v. Lyon*, 103 N.M. 305, 307–08, 706 P.2d 516, 518–19 (Ct.App.), *cert. denied,* 103 N.M. 287, 705 P.2d 1138 (1985). Probable cause is obviously a higher standard than reasonable suspicion. *See Copeland*, 105 N.M. at 31, 727 P.2d at 1346.

▆▆▆▆ The reasonable suspicion standard "effects a needed balance between private and public interests when law enforcement officials must make a limited intrusion on less than probable cause." *U.S. v. Montoya de Hernandez*, 473 U.S. 531, 541, 105 S.Ct. 3304, 3310, 87 L.Ed.2d 381. It is thus well suited for the type of limited intrusions expected at border patrol stations. *Id.* We have previously indicated that, in order to justify detention of a vehicle, beyond routine questioning, law enforcement agents need only have a reasonable suspicion of criminal activity. *See State v. Cohen*, 103 N.M. 558, 711 P.2d 3 (1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986) (detention of the defendants' vehicle after the officer received negative information as to whether the defendants were wanted or whether defendants were driving a stolen car was proper when based on reasonable suspicion); *City of Las Cruces v. Betancourt*, 105 N.M. 655, 735 P.2d 1161 (Ct.App.) (in roadblock stop, motorists should be detained only long enough to be informed of the purpose of the stop and to look into the vehicle for signs of intoxication; further detention at a secondary area is appropriate if facts within officer's observation warrant it), *cert. denied,* 105 N.M. 618, 735 P.2d 535 (1987); *cf. State v. Vasquez*, 112 N.M. 363, 365, 815 P.2d 659, 661 (Ct.App.) ("probable cause or other basis" needed for border patrol agent to seize bag from undercarriage of truck), *cert. denied,* 112 N.M. 388, 815 P.2d 1178 (1991). The district court correctly adopted reasonable suspicion as the proper legal standard.

## AGENT GARZA HAD REASONABLE SUSPICION

▆▆▆▆ Reasonable suspicion must be judged by the totality of the circumstances. *Estrada*, 111 N.M. at 801, 810 P.2d at 820. In this case, Agent Garza made additional inquiries beyond Defendant's citizenship,

based on: (1) Defendant's "kicked back" demeanor; (2) the initial smell of alcohol; (3) the time of night; (4) the lack of visible luggage; (5) the expensive vehicle seemed inconsistent with Defendant's youth; and (6) after receiving permission to look in the back seat, the smell of burnt marijuana. These are exactly the type of factors from which courts have repeatedly derived sufficient "reasonable suspicion" to sustain more extended investigations at routine fixed points near the border. Mandell & Richardson, *supra*, 28 Ariz.L.Rev. at 350–51.

We agree with the district court that the initial odor of alcohol was especially significant. This was sufficient to justify the request to look in the back seat, which led to the detection of the burnt marijuana smell. There is clear legal precedent indicating that if during a lawful automobile stop an officer smells alcohol or drugs, he has at least reasonable suspicion under the "plain odor" doctrine. *United States v. Johns*, 469 U.S. 478, 486, 105 S.Ct. 881, 886, 83 L.Ed.2d 890 (1985); *United States v. Haley*, 669 F.2d 201, 203–04 (4th Cir.1982), *cert. denied*, 457 U.S. 1117, 102 S.Ct. 2928, 73 L.Ed.2d 1329 (1982); James B. Jacobs & Nadine Strossen, *Mass Investigations Without Individualized Suspicion: A Constitutional and Policy Critique of Drunk Driving Roadblocks*, 18 U.C.Davis L.Rev. 595, 651 (1985). Indeed this Court has found that the strong odor of marijuana emanating from a vehicle stopped at a routine roadblock provides more than the reasonable suspicion sufficient for further detention and investigation. *State v. Goss*, 111 N.M. 530, 534, 807 P.2d 228, 232 (Ct. App.), *cert. denied*, 111 N.M. 416, 806 P.2d 65 (1991).

■■■ Defendant argues that Agent Garza had insufficient training to be able to recognize the odor of marijuana and reinforces this argument by pointing out that while Garza testified that he thought he smelled burnt marijuana, what was actually found under the front seat was raw marijuana. This ignores both Garza's training and the actual facts of this case. Agent Garza testified he had three-and-one-

half years of experience with the Border Patrol. Training for the Border Patrol included a sixteen-hour course addressing narcotic characteristics and detection. During this law enforcement course, Agent Garza stated he experienced the smell of raw marijuana. In addition, Agent Garza testified that on five previous occasions he had smelled burnt marijuana and three of those resulted in seizures. This testimony is sufficient to establish Agent Garza's qualifications to detect the smell of burnt marijuana. *State v. Sandoval*, 92 N.M. 476, 478, 590 P.2d 175, 177 (Ct.App.1979). Moreover, the fact that only raw marijuana was found does not negate the fact that Defendant also possessed a rolled marijuana cigarette and a pack of rolling papers in his pocket. This is certainly not inconsistent with Agent Garza's perception the car smelled like burnt marijuana.

■■■ Defendant argues that "[a]t the time Garza referred defendant to the secondary area, he had prolonged a valid inquiry into citizenship and a limited visual inspection of the car into a general inquiry about travel and ownership of the car, alcohol consumption, and a search of the interior of the car." While it is true that reasonable suspicion does not provide carte blanche, it does allow detention sufficient to verify or dispel the circumstances giving rise to the suspicion. *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *Betancourt*, 105 N.M. at 659, 735 P.2d at 1165. Once Agent Garza smelled the initial odor of alcohol, he had the right to detain Defendant for a sufficient period to investigate the source of the odor. While attempting to trace the alcohol odor, Garza smelled burnt marijuana in the back seat of Defendant's vehicle. He was then, in turn, entitled to investigate the marijuana odor. Directing Defendant to the secondary detention area was an appropriate detention to investigate Agent Garza's reasonable suspicion. *See United States v. Rubio–Rivera*, 917 F.2d 1271 (10th Cir.1990) (referral to secondary checkpoint appropriate when agent has reasonable suspicion that a crime has been committed). The odor of marijuana was also sufficient to provide the probable

cause necessary to search the vehicle. *State v. Goss,* 111 N.M. at 534, 807 P.2d at 232.

## CONCLUSION

We hold that, after initially detecting the odor of alcohol, Agent Garza possessed reasonable suspicion of criminal activity and therefore was entitled to further detain Defendant. During this detention, Garza obtained valid consent from Defendant to search the back seat of the vehicle. While searching the back seat, Agent Garza smelled what he perceived to be burnt marijuana. Based on his detection of the odor Garza had correctly identified as burnt marijuana on other occasions, he had at least reasonable suspicion to justify the further detention and investigation in the secondary detention area. *See Goss,* 111 N.M. at 534, 807 P.2d at 232. This in turn led to the discovery of the marijuana and arrest.

We affirm the trial court's denial of Defendant's motion to suppress.

IT IS SO ORDERED.

ALARID and CHAVEZ, JJ., concur.