889 P.2d 209

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Charles V. FRANKS, Defendant–Appellee.**

**No. 14853.**

Court of Appeals of New Mexico.

July 18, 1994.

Tom Udall, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellee.

## OPINION

HARTZ, Judge.

The State appeals from the district court's order suppressing statements made by Defendant during and immediately after a telephone call he placed to obtain emergency assistance for a drug overdose. Defendant is charged with possession of cocaine. We reverse and remand for further proceedings.

## I. BACKGROUND

On September 14, 1992, shortly after 2 a.m., Defendant called 911 from a pay phone at the Town and Country Store in Roswell to request an ambulance. He told the dispatcher where he was, that he had taken an overdose of cocaine, and that he thought he was dying. The dispatcher sent police and an ambulance to the scene. Officers David Hedrick and David Schear arrived while Defendant was still talking to the dispatcher. When Hedrick asked Defendant for identification, Defendant indicated that his billfold was on the ground by the phone. Defendant then hung up the phone and the officers asked him if he was all right. Defendant replied that he was not and that he had overdosed on cocaine, having snorted, smoked, and shot up some cocaine. The officers told Defendant that an ambulance was on the way. Defendant then became light-headed and collapsed to the ground, but did not lose consciousness. Although the officers kept talking to Defendant while he was on the ground, the only information he provided at this time was in response to a question about identification—he again referred the officers to his billfold.

At the district court suppression hearing, witnesses testified about additional statements made by Defendant after he arrived at the hospital. The State does not appeal from the suppression order insofar as it concerns those later statements.

The district court suppressed the statement to the 911 dispatcher on the ground that the statement was more prejudicial than probative. On appeal Defendant contends that an alternative ground for suppression is that the statement was protected by the physician-patient privilege. The district court suppressed Defendant's other statements on the ground that they were involuntary.

## II. DISCUSSION

### A. Statement to the 911 Dispatcher

#### 1. Unfair Prejudice

 The pertinent portion of the exchange between the dispatcher and Defendant, which was recorded, was as follows:

Defendant: I OD'd.

Dispatcher: What did you take?

Defendant: Cocaine.

Under New Mexico law, to convict Defendant of possession of cocaine that he had ingested, it is necessary to prove that he voluntarily and knowingly ingested the drug in New Mexico. See NMSA 1978, § 30–31–23 (Cum. Supp.1994); State v. McCoy, 116 N.M. 491, 495–97, 864 P.2d 307, 311–13 (Ct.App.), cert. granted, 117 N.M. 802, 877 P.2d 1105 (1993). Defendant's statement was probative of the offense in three respects. The fact that he thought that cocaine was present in his body tends to establish that (1) cocaine was pres-

ent in his body, (2) he knew that it was cocaine when he ingested it, and (3) the ingestion was voluntary (although there could be other explanations of how he knew that he had ingested cocaine). Thus, Defendant's statement was relevant evidence. *See* SCRA 1986, 11–401 (Repl.1994) (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). In the absence of some specific ground for exclusion, relevant evidence is admissible. SCRA 1986, 11–402 (Repl.1994). That the evidence fails to prove the party's entire case is not a sufficient ground for exclusion.

 In its order suppressing Defendant's statement to the dispatcher, the district court made the following finding:

Defendant's response to the dispatcher's question "what did you take?" primarily concerned the drug in his body and not the method of ingestion and is more prejudicial than probative.

The district court apparently based exclusion of the evidence on SCRA1986, 11–403 (Repl. 1994), the rule of evidence that permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." This Court reviews the trial court's exclusion of evidence under SCRA 11–403 to determine whether there has been an abuse of discretion. *State v. Chamberlain,* 112 N.M. 723, 726, 819 P.2d 673, 676 (1991).

In what respect was the evidence unfairly prejudicial? Defendant's brief on appeal offers only that "[i]t was highly prejudicial because of the jury's natural inclination to consider the statement as indisputable evidence of guilt, which it is not." We disagree. We are aware of no authority supporting an assumption that the jury cannot properly weigh such a statement by a defendant. On the contrary, our Supreme Court has recently emphasized its faith in the ability of juries to evaluate evidence. *State v. Alberico,* 116 N.M. 156, 163–64, 861 P.2d 192, 199–200 (1993) (admissibility of expert opinion). Because Defendant has not explained how admission of the statement would create a "danger of unfair prejudice," SCRA 11–403, we hold that the district court erred in excluding as prejudicial the statement to the police dispatcher.

## 2. Physician–Patient Privilege

 Defendant contends that even if his statement to the dispatcher should not have been excluded under SCRA 11–403, it was excludable as a privileged communication under SCRA1986, 11–504 (Repl.1994). This argument, however, was not presented to the district court. Although we may affirm a district court ruling on a ground not relied upon by the district court, *State v. Lovato,* 112 N.M. 517, 521, 817 P.2d 251, 255 (Ct. App.), *cert. denied,* 112 N.M. 388, 815 P.2d 1178 (1991), we will not do so if reliance on the new ground would be unfair to the appellant. *See Naranjo v. Paull,* 111 N.M. 165, 170, 803 P.2d 254, 259 (Ct.App.1990). In particular, it would be unfair to an appellant to affirm on a fact-dependent ground not raised below. First, ordinarily it is improper for this Court to engage in fact-finding; that is a trial-court function. Second, it would be improper to make a finding on a fact relevant only to an issue that had not been raised below, because the appellant lacked an opportunity to present admissible evidence relating to the fact. Because Defendant's privilege argument is fact-dependent, we cannot affirm the suppression order on that ground. We explain.

Two portions of the rule establishing the physician-patient privilege govern its application here. SCRA 11–504(B) states the general rule of privilege:

A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of his physical, mental or emotional condition, including drug addiction, among himself, his physician or psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

The definition of *confidential* is set forth in SCRA 11–504(A)(4), which states:

A communication is "confidential" if not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination or interview, or persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist, including members of the patient's family.

In this case Defendant said that he needed an ambulance and then, in response to a question from the dispatcher, said that he had overdosed on cocaine. The physician-patient privilege applies to statements to non-physicians only if the non-physician is "participating in the diagnosis or treatment under the direction of the physician." SCRA 11–504(B). There was no evidence elicited in the district court hearing regarding whether the dispatcher was acting under the direction of a physician. Perhaps Defendant's statement to the dispatcher would be privileged if it was intended for a physician and Defendant was using the dispatcher merely as a necessary conduit for the transmission of the communication. *See* SCRA 11–504(A)(4). Again, however, suppression on this theory would require fact-finding by the district court. Therefore, we need not decide on this appeal the extent to which the language "persons reasonably necessary for the transmission of the communication," *id.*, encompasses persons other than translators. *See State v. Miller,* 300 Or. 203, 709 P.2d 225, 237–38 (1985) (interpreting similar language in statute creating psychotherapist-patient privilege), *cert. denied,* 475 U.S. 1141, 106 S.Ct. 1793, 90 L.Ed.2d 339 (1986).

### B. Statements to the Officers

Defendant made a number of statements to police officers after his conversation with the 911 dispatcher. The district court suppressed all of them on the ground that they were involuntary. The State challenges that ruling only with respect to Defendant's statements to police officers while he was at the phone booth before the ambulance arrived.

▪ We begin our analysis by emphasizing that this is not a case that comes under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant does not contend that he was under arrest or otherwise in custody during his interchange with the officers prior to the arrival of the ambulance. *Cf. State v. Ybarra,* 111 N.M. 234, 237–38, 804 P.2d 1053, 1056–57 (1990) (questioning of arrestee by nurse in officer's presence was custodial interrogation subject to *Miranda* ). If *Miranda* applied, the officers would have been required to advise Defendant of certain constitutional rights and any statement made by Defendant would be inadmissible as evidence against him unless Defendant waived those rights voluntarily, knowingly, and intelligently. *State v. Young,* 117 N.M. 688, 690–92, 875 P.2d 1119, 1121–23 (Ct.App.1994). A defendant's intoxication may be highly relevant in determining whether a waiver was knowing and intelligent. *See id.*

Here, however, there was no need for a *Miranda* warning and consequently no need for a knowing, intelligent, and voluntary waiver of *Miranda* rights. The sole issue raised by Defendant is whether his statement was "voluntary." *See Smith v. Duckworth,* 856 F.2d 909, 911 (7th Cir.1988) (distinguishing between valid waiver of *Miranda* rights and voluntariness of confession); *United States v. Yunis,* 859 F.2d 953, 965 (D.C.Cir. 1988) (noting that United States Supreme Court has indicated that a volunteered confession need not be knowing and intelligent).

▪ The State has the burden of proving voluntariness by a preponderance of the evidence. *Aguilar v. State,* 106 N.M. 798, 800, 751 P.2d 178, 180 (1988). We review the district court's findings of historical facts only to determine whether they are supported by substantial evidence. *See State v. Attaway,* 117 N.M. 141, 870 P.2d 103, 106 (1994). But we apply de novo review to certain mixed questions of law and fact such as the voluntariness of confessions. *Id.* at 145, 870 P.2d at 107.

▪ To determine whether Defendant's statement was voluntary, we turn to *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Connelly had confessed to a murder while suffering from

schizophrenic delusions. The Colorado Supreme Court affirmed suppression of the confession, stating, " 'One's capacity for rational judgment and free choice may be overborne as much by certain forms of severe mental illness as by external pressure.' " *Id.* at 162, 107 S.Ct. at 519 (quoting *State v. Connelly,* 702 P.2d 722, 728 (Colo.1985) (en banc)). The United States Supreme Court reversed, holding that "[t]he sole concern of the Fifth Amendment ... is governmental coercion." *Id.* 479 U.S. at 170, 107 S.Ct. at 523. According to the Court, "The difficulty with the approach of the Supreme Court of Colorado is that it fails to recognize the essential link between coercive activity of the State, on the one hand, and a resulting confession by a defendant, on the other." *Id.* at 165, 107 S.Ct. at 521. It stated, "We hold that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* at 167, 107 S.Ct. at 522. "The voluntariness of a waiver of [the Fifth Amendment] privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." *Id.* at 170, 107 S.Ct. at 523.

This is not to say that the Supreme Court found the suspect's mental condition to be irrelevant to a determination of voluntariness. It observed, "Respondent correctly notes that as interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the 'voluntariness' calculus." *Id.* at 164, 107 S.Ct. at 520. Nevertheless, "[T]his fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.' " *Id.*

Thus, in *Aguilar* our Supreme Court emphasized the defendant's borderline mental retardation and paranoid schizophrenia in evaluating whether the confession was voluntary. 106 N.M. at 800, 751 P.2d at 180. The Court did not reject *Connelly.* On the contrary, it cited *Connelly* and wrote, "The due process standards are that the confession must have been freely given and not induced by promise or threat." *Id.*

The record before us does not reflect any improper conduct by the officers prior to the arrival of the ambulance. When the officers arrived, they approached Defendant while he was still talking to the police dispatcher. They asked for identification. He directed them to his billfold lying by the phone on the ground. He then hung up the phone, and the officers asked him if he was all right. He said he was not. He told the officers that he had snorted three lines of cocaine and had also smoked and shot up some cocaine. The officers advised him that the ambulance was on the way to help him. Then he appeared to get light-headed and started to fall to the ground. Officer Hedrick testified that he "was trying to get everything I could in case he would pass out completely, and then the medical ambulance would—I could give them the information." But Defendant provided no additional information.

■ The individual officer's subjective intent in questioning Defendant is not relevant. *See Stansbury v. California,* —— U.S. ——, ——, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994) (whether a suspect is in custody for purposes of *Miranda* depends on objective circumstances, not the subjective views of the suspect or the interrogators); *New York v. Quarles,* 467 U.S. 649, 656, 104 S.Ct. 2626, 2631, 81 L.Ed.2d 550 (1984) (availability of "public safety" exception to *Miranda* does not depend on motivation of officers). The issue is whether the police conduct constituted overreaching. Here it did not. When officers respond to a medical emergency and find the victim in such a state that he or she may be unable to communicate later with medical personnel, the officers have a duty to obtain as much information as they can concerning the medically relevant cause of the victim's condition.

Our conclusion is buttressed by court decisions adopting a "public safety" exception to the requirements of *Miranda* and a related "rescue" exception. In *Quarles* the Supreme Court held that officers did not need to give *Miranda* warnings to an arrestee before asking about the whereabouts of a gun that the arrestee had concealed in the supermarket

where the arrest took place. The Court reasoned that the prophylactic purpose of *Miranda* warnings was outweighed by the danger to public safety posed by the concealed weapon. *Id.* at 657, 104 S.Ct. at 2632.

Other courts have expanded *Quarles* to excuse compliance with *Miranda* when questioning is required to rescue or protect a person whose life is in danger. *See, e.g., State v. Provost,* 490 N.W.2d 93, 96–97 (Minn.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1306, 122 L.Ed.2d 694 (1993); *United States v. Kordosky,* No. 88–CR–52–C, 1988 WL 238041 (W.D.Wis. Sept. 12, 1988) (officer who was booking defendant noticed track marks on her arm and asked her about recent drug use), *aff'd,* 878 F.2d 991 (7th Cir. 1989), *vacated on other grounds,* 495 U.S. 916, 110 S.Ct. 1943, 109 L.Ed.2d 306 (1990). *See generally* Wendy Evans Lehmann, Annotation, *Concern for Possible Victim (Rescue Doctrine) as Justifying Violation of Miranda Requirements,* 9 A.L.R.4th 595 (1981).

We need not decide in this case whether to adopt the public safety or rescue exceptions to *Miranda.* As previously noted, Defendant makes no claim that *Miranda* applies. The reason for citing these doctrines is only to point to the favor in which courts hold questioning to protect lives that are imminently endangered. If such a purpose can excuse *Miranda* warnings when questioning a person in custody, *a fortiori* it is not police overreaching to question for that purpose a person who is not in custody.

There being no evidence of promises or threats, subtle or otherwise, by the officers, we determine that Defendant's statements to them at the phone booth were "voluntary" as required by the Fifth and Fourteenth Amendments. We therefore hold that the district court erred in excluding these statements as involuntary.

### III. CONCLUSION

Our holding is a narrow one. We hold only that the district court erred (1) in suppressing Defendant's statement to the 911 dispatcher on the ground that the statement was overly prejudicial and (2) in suppressing Defendant's statements to the officers at the phone booth on the ground that they were

involuntary. Resolving no other potential grounds for suppression, we reverse and remand for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DONNELLY and FLORES, JJ., concur.