889 P.2d 215

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Santos PORRAS–FUERTE, Defendant–Appellant.**

No. 15214.

Court of Appeals of New Mexico.

Oct. 28, 1994.

Certiorari Granted Dec. 16, 1994.

Tom Udall, Atty. Gen., Shari Weinstein, Sp. Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Susan Roth, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

PICKARD, Judge.

Defendant appeals from the denial of his motion to suppress a cellular phone that was seized from his automobile, a Trans Am, and marijuana and a cellular phone seized from his co-defendants' automobile, a Ford LTD, by U.S. Border Patrol agents. He pled no contest to conspiracy to possess marijuana with intent to distribute, reserving his right to appeal the denial of his motion to suppress. Defendant also appeals the denial of his motion to dismiss on the basis that his right to a speedy trial was violated.

Defendant raises four issues on appeal: (1) whether there was reasonable suspicion to stop the LTD; (2) whether there was reasonable suspicion to stop the Trans Am; (3) whether probable cause was required to stop the two vehicles; and (4) whether the Supreme Court's extension of the time within which to commence his trial violated Defendant's right to a speedy trial. During the calendaring process, this Court suggested that Defendant might not have standing to challenge the seizure of evidence from the LTD, and both parties briefed this issue in the appeal. We hold that standing may not be reviewed for the first time on appeal under the circumstances of this case. For the reasons discussed below, we reverse and remand on Issues 1 and 2.

FACTS

Border Patrol agents stopped a Ford LTD at the Orogrande checkpoint on Highway 54 at around 1:30 a.m. on January 13, 1992. The driver said that he and his passenger were headed to Ruidoso to ski. A ski rack with skis was on top of the car. After the car pulled away from the checkpoint, another agent, Agent Garza, observed that the skis on top of the LTD did not have bindings. The lack of bindings apparently struck the agents as odd, and they decided to call the southbound agents to have the LTD pulled over. A BOLO (be on the look-out) was issued.

Agent Garza testified that the occupants of the LTD were not dressed for skiing and had an ice chest in the back seat. He noticed the car had New Mexico plates and assumed it was coming from El Paso because it looked as if it had not been traveling long.

After the LTD left the checkpoint, Agent Sanchez stopped it pursuant to the BOLO. He questioned the occupants about citizenship and then asked for consent to search the car. As a result of the search, bundles of marijuana and a cellular phone were discovered in the car.

There had been a lot of traffic heading for the mountains on the night of the search, coming in clusters about ten to fifteen minutes apart. A black Trans Am driven by Defendant preceded the LTD through the checkpoint by about fifteen minutes. Defendant told Agent Garza he was on his way to a

motel in Alamogordo to pick up a friend. Agent Garza did not notice any clothes in the car, so he asked Defendant to open the trunk because he thought there might be an alien in there. Nothing was in the trunk. A cellular phone was not found.

About the time that the Ford LTD was stopped, an agent observed the Trans Am stopped northbound on the side of the highway approximately fifteen miles north of the checkpoint. An agent testified at the hearing that he was concerned that the vehicle might be waiting to pick up aliens who had been hiding in the brush. He indicated that this was a common practice in alien smuggling. The car was then seen driving in the opposite direction and was stopped by a border patrol agent near the checkpoint after the seizure of the marijuana from the LTD. When the agent looked inside the car, he saw a cellular phone. At that point, the agents determined the two cars were together and that Defendant was operating as a "scout car" for his co-defendants.

STANDING

■ In our initial calendar notice, we questioned whether Defendant had standing to challenge the search of the LTD. It is undisputed by the parties that the State failed to raise this issue in the trial court. The State argues on appeal that standing is jurisdictional and therefore may be raised at any time. We do not agree.

Standing is not jurisdictional; rather, it is a substantive doctrine that identifies those who may assert rights against unlawful searches and seizures. *State v. Schlosser*, 774 P.2d 1132, 1138 (Utah 1989); *see Rakas v. Illinois*, 439 U.S. 128, 139–40, 99 S.Ct. 421, 428–29, 58 L.Ed.2d 387 (1978). Further, where, as here, the State's failure to raise the objection results in Defendant not having notice that he was required to put on proof of standing, the argument may be deemed waived. *See Steagald v. United States*, 451 U.S. 204, 209, 101 S.Ct. 1642, 1646, 68 L.Ed.2d 38 (1981). Federal courts will sometimes find a waiver when the State has not shown good reason for failing to raise the issue below. *See United States v. Dewitt*, 946 F.2d 1497, 1499–1500 (10th Cir.1991), *cert. denied*, 502 U.S. 1118, 112 S.Ct. 1233,

117 L.Ed.2d 467 (1992). If standing were jurisdictional or otherwise required to be proved by the defendant regardless of the prosecutor's inaction on the issue, cases such as *Steagald* and *Dewitt* would not exist. *See also Combs v. United States*, 408 U.S. 224, 227, 92 S.Ct. 2284, 2286, 33 L.Ed.2d 308 (1972) (per curiam) (defendant's failure to assert standing explained by "the related failure of the Government" to challenge his standing; case vacated and remanded for further factual determination).

In the recent case of *State v. Franks*, 119 N.M. 174, 889 P.2d 209 (Ct.App.1994), this Court held that "it would be unfair to an appellant to affirm on a fact-dependent ground not raised below ... because the appellant lacked an opportunity to present admissible evidence relating to the fact." 119 N.M. at 177, 889 P.2d at 212. In accordance with *Franks*, we hold that standing may not be raised for the first time on appeal since it is a fact-based issue. The defendant must be alerted to the issue and given the opportunity to present evidence thereon at the trial court level.

■ The foregoing does not, however, preclude the State from raising this issue upon remand. Because we are not deciding whether Defendant had standing, the law-of-the-case doctrine does not preclude the State from presenting the issue (for example, by a motion in limine) on remand after the judgment based on the guilty plea is set aside. If the State chooses to raise the issue of standing, Defendant may introduce evidence to prove a sufficient Fourth Amendment interest. Additionally, Defendant may ask the court to adopt the rule of "co-conspirator standing" or "automatic standing," as argued in his brief. We intimate no opinion at this time on how the trial court should rule on any of these issues.

■ Finally, we decline Defendant's invitation to rule that the State has waived the issue of standing by not raising it below. *See Dewitt*, 946 F.2d at 1499–1500. In the same procedural situation that we face in this case, *Combs* did not apply a waiver. *Steagald* involved a quite different situation. The government's waiver in *Steagald* was based on

its express representations in the appellate courts that were inconsistent with its belated challenge to standing; the Supreme Court said only that the government lost its right to raise new factual issues in the Supreme Court itself, 451 U.S. at 209, 101 S.Ct. at 1646, and the Court pointed out that the government had not filed a cross-petition in the Supreme Court seeking remand to the district court for further proceedings, *id.* at 210, 101 S.Ct. at 1646. Moreover, we believe that the procedural posture in *Dewitt* makes the waiver applied therein not persuasive precedent for our purposes here. In *Dewitt,* the appellate court affirmed the defendant's conviction and upheld the trial court's ruling on the motion to suppress. Thus, the discussion of waiver was not necessary to the decision, and the appellate court had no need to consider whether the issue of standing could be raised in the district court after remand.

## STANDARD FOR STOPS OF THE VEHICLES

■ The trial court's denial of Defendant's motion to suppress will not be overturned on appeal if the denial is supported by substantial evidence. *State v. Galloway,* 116 N.M. 8, 9, 859 P.2d 476, 477 (Ct.App.1993); *State v. Goss,* 111 N.M. 530, 534, 807 P.2d 228, 232, *cert. denied,* 111 N.M. 416, 806 P.2d 65 (1991). We view the evidence in the light most favorable to the trial court's ruling and determine whether the law was correctly applied to the facts, although the reasonable suspicion necessary to justify an intrusive stop is generally a question of law. *Galloway,* 116 N.M. at 9, 859 P.2d at 477. We review the totality of the circumstances to determine whether the searches in this case were justified. *State v. Guzman,* 118 N.M. 113, 115, 879 P.2d 114, 116 (Ct.App.1994) (No. 13,977); *State v. Affsprung,* 115 N.M. 546, 549, 854 P.2d 873, 876 (Ct.App.), *cert. denied,* 115 N.M. 545, 854 P.2d 872 (1993).

■ In order to justify detention of a vehicle for brief routine questioning at a permanent border checkpoint, agents need not have any individualized suspicion of wrongdoing. *Affsprung,* 115 N.M. at 549, 854 P.2d at 876. In *Affsprung,* this Court held that the standard for detention at a border checkpoint beyond initial questioning was reasonable suspicion. *Id.*

■ In this case, both the LTD and the Trans Am were passed through the checkpoint and stopped for a second time. It was the second stop for each of the vehicles that yielded the evidence of criminal activity Defendant sought to suppress. Defendant contends that the second stops were unlawful unless based on probable cause because they constituted arrests. He contends that each stop was an arrest because each was "a seizure characterized by highly intrusive or lengthy search or detention." *See United States v. Espinosa,* 782 F.2d 888, 891 (10th Cir.1986). We disagree. Prior to the consents to search, each stop consisted only of a brief detention which included brief questioning. We are aware of no authority requiring probable cause to conduct such a detention. Thus, we decline to hold probable cause was necessary in this case. Rather, reasonable suspicion remains the standard by which we judge these second stops. However, this does not mean that reasonable suspicion has a fixed meaning.

■ As in the recent *Guzman* case, the inquiry into the justification of the detention depends on the "probativeness of the articulable suspicious circumstances and the extent of the intrusion." 118 N.M. at 116, 879 P.2d at 117. The reasonableness of the detention rests on balancing the nature and quality of the intrusion against the importance of governmental interests. *State v. Cohen,* 103 N.M. 558, 563, 711 P.2d 3, 8 (1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986); *see also Brown v. Texas,* 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640–41, 61 L.Ed.2d 357 (1979). Thus, it may be said that reasonable suspicion is evaluated on a sliding scale such that as the degree of intrusion intensifies so must the probativeness of the articulated circumstances. *See Guzman,* 118 N.M. at 116, 879 P.2d at 117.

■ An officer or agent must be aware of specific articulable facts, together with rational inferences from those facts, to provide the basis for reasonable suspicion. *Cohen,* 103 N.M. at 562, 711 P.2d at 7. These facts and inferences are to be judged by an objec-

tive standard; for example, whether or not the facts available to the officer would warrant the officer as a person of reasonable caution to believe the action taken was appropriate. *Id.; State v. Hilliard*, 81 N.M. 407, 409, 467 P.2d 733, 735 (Ct.App.1970).

In light of the foregoing, we examine the stops in the instant case.

LTD STOP

■ We hold as a matter of law that the second stop of the LTD was unreasonable. The facts as articulated by the agents did not rise to the level of reasonable suspicion necessary to justify a stop of that vehicle independent of the detention at the fixed checkpoint. The agents pointed to the time of night. It was approximately 1:30 a.m. when the LTD drove through the checkpoint. However, it is not unusual for skiers to travel late at night to ski the next day; as evidenced by the heavy traffic at the checkpoint testified to by the agents. The agents noted that the occupants were not dressed in ski clothing. However, many people do not wear bulky ski clothing while driving to the town where they will ski the following day. Another articulated fact was the absence of luggage in the back seat. However, no one looked in the trunk, and we will not hold that the possible use of one's trunk to store luggage would engender reasonable suspicion that criminal activity was afoot. Lastly, there was the absence of bindings on the skis. However, bindings could easily have been installed in a couple of hours or less at the ski complex. In short, there was nothing untoward about the appearance or actions of the LTD or its passengers.

The State points to the experience of the officers and number of items of information in attempting to justify the stop and distinguish this case from *State v. Estrada*, 111 N.M. 798, 810 P.2d 817 (Ct.App.1991). However, there is nothing in the record of this case to suggest that people who travel to a ski area late at night in street clothes in a heated car with their belongings in the trunk and new skis on top of the car are likely to be violating the law. Thus, these facts should not cause a reasonable, experienced police officer to think anything other than that the skiers were what they appeared to be. *Cf. Guzman*, 118 N.M. at 115, 879 P.2d at 116 (testimony of highly unusual strength of air freshener, together with unusual nervousness, justified additional detention at checkpoint).

There was no indication that the law had been or was being violated. *See State v. Galvan*, 90 N.M. 129, 131, 560 P.2d 550, 552 (Ct.App.1977). The agents did not observe conduct that would lead a reasonably cautious person to conclude the occupants were engaged in criminal activity. Moreover, all of these "facts" were present at the time of the initial stop at the border patrol checkpoint. Nothing occurred or was noted by the agents to enhance or increase their suspicion regarding the LTD after the initial stop except the absence of bindings on the skis. Had the agents questioned the occupants of the LTD about this absence during the initial stop, this brief additional detention for questioning would have been authorized by the sliding scale balance described in *Cohen* and *Brown* and applied in *Guzman*. Had additional questions been asked at the checkpoint, perhaps probable cause or additional reasonable suspicion would have developed. However, once the LTD was allowed to continue on its way, any second stop of that vehicle would be measured, according to the sliding scale, by the probativeness of the articulable suspicious circumstances necessary to justify the intrusion of a non-fixed-checkpoint stop. In other words, the LTD could not be subjected to the intrusion of an additional stop without commensurate reasonable suspicion. *See Guzman*, 118 N.M. at 116, 879 P.2d at 117. Consequently, because an officer would not be justified in stopping motorists in street clothes driving toward a ski resort at 1:30 in the morning without luggage in their cars and without bindings on their skis, the evidence obtained from this unlawful second detention should have been suppressed. *See generally Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

TRANS AM STOP

■ While the stop of the Trans Am could be justified without reference to the stop of the LTD, the trial court tied the two together. The trial court found there was

186

reasonable suspicion to stop the Trans Am because: (1) Defendant came through the checkpoint fifteen minutes prior to the LTD; (2) the agent thought Defendant's stated purpose of travel, to pick up someone at a motel in the middle of the night, to be unusual; (3) the Trans Am was observed parked at mile marker 50 after the LTD was stopped at mile marker 35; (4) the Trans Am was observed driving away from Alamogordo after the LTD was stopped; (5) a cellular phone and marijuana were found in the LTD, which was known by the agent who stopped the Trans Am; and (6) the Trans Am was being used in a manner consistent with the agents' training and experience with scout cars. Defendant complains that the scout-car rationale cannot be used because it was not volunteered by the officers as the reason that they stopped the Trans Am. However, the officer does not have to give the right reasons for having reasonable suspicion as long as the facts known to the officer and articulated by him provide those reasons. *Cf. State v. Luna*, 93 N.M. 773, 777, 606 P.2d 183, 187 (1980) (arrest not invalidated because officer gave wrong reasons for it as long as grounds supporting arrest are known to the officer and the arrest is otherwise proper). Thus, the trial court's rationale for upholding the stop of the Trans Am was correct.

Even without the information from the LTD, the stop of the Trans Am would have been proper. The agents' suspicions were aroused when the Trans Am first crossed through the checkpoint and Defendant told the agents about his unusual purpose of picking someone up at a motel in Alamogordo in the middle of the night. The Trans Am was then seen stopped on the highway, in a position to pick up people hiding in the brush. It was then seen heading back in the other direction without having gone to Alamogordo. The combination of these circumstances provided sufficient reasonable suspicion to stop it. *See Guzman*, 118 N.M. at 120, 879 P.2d at 121.

However, notwithstanding the lawfulness of the stop of the Trans Am, without evidence from the LTD, Defendant was merely found to be in possession of a cellular phone, a non-criminal act. The evidence

from the LTD was thus necessary to support the seizure of the phone. We have held that the evidence from the LTD was unlawfully seized. Assuming that Defendant has standing to challenge that seizure, the evidence seized from the Trans Am was also subject to suppression as the fruit of that unlawful stop. *See Wong Sun.*

SPEEDY TRIAL

Defendant's last issue is that the Supreme Court's second extension of time granted to the State deprived Defendant of his right to a speedy trial. As Defendant acknowledges, the Court of Appeals cannot review an extension of time granted by the Supreme Court, *State v. Sedillo*, 86 N.M. 382, 382, 524 P.2d 998, 998 (Ct.App.), *cert. denied*, 86 N.M. 372, 524 P.2d 988 (1974), *and cert. denied*, 419 U.S. 1072, 95 S.Ct. 662, 42 L.Ed.2d 669 (1974). Moreover, Defendant advances no argument on the speedy trial factors apart from his contention that the Supreme Court erroneously granted the motion for extension of time because it was filed too late. *See State v. Garcia*, 110 N.M. 419, 421, 796 P.2d 1115, 1117 (Ct.App.) (Court of Appeals may consider speedy trial claims not necessarily previously determined by Supreme Court), *cert. denied*, 110 N.M. 282, 795 P.2d 87 (1990); *State v. Ciarlotta*, 110 N.M. 197, 201, 793 P.2d 1350, 1354 (Ct.App.) (issues not argued in the brief in chief are abandoned), *cert. denied*, 110 N.M. 183, 793 P.2d 865 (1990). Therefore, we decline to review this issue.

CONCLUSION

In sum, we hold that the stop of the LTD was unreasonable and that, based on the issues framed in the trial court, the fruits of that search should have been suppressed along with the evidence seized from the Trans Am. We, therefore, reverse the denial of Defendant's motion to suppress and remand to the trial court.

IT IS SO ORDERED.

HARTZ, J., concurs.

DONNELLY, J., dissents.

DONNELLY, Judge (dissenting).

I respectfully disagree with the majority's application of the law of search and seizure as it applies to the facts of this case. This appeal involves the question of whether the trial court erred in denying Defendant's motion to suppress (1) a cellular telephone found in the Pontiac Trans Am driven by him; and (2) the marijuana, cellular telephone, and list of telephone numbers found in a second vehicle (Ford LTD), driven or occupied by two other individuals. Defendant's written motion to suppress only sought to exclude the evidence obtained "after the stop of [his] vehicle"; however, at the hearing on the motion to suppress, he joined in the motion to suppress evidence found in the second vehicle filed by the driver and passenger thereof.

At the conclusion of the evidentiary hearing on Defendants' joint motions to suppress, the trial court found, among other things, that after Border Patrol officers stopped and searched the Ford LTD, Defendant was observed to have stopped his vehicle, a Pontiac Trans Am, to have turned his car around and then proceed south in the direction he had originally come from. The trial court also found that "a Border Patrol agent having knowledge of the stop of the Ford LTD and the seizure of the marijuana [therein], stopped the [Pontiac driven by Defendant and asked permission to search the vehicle] ... and a cellular telephone was seized...." Based on its findings the trial court concluded, inter alia, that consistent with the training and experience of Border Patrol officers that stopped Defendant's car, it was being used by Defendant in a manner consistent with a scout car, and that Defendant gave his "lawful consent for the search of the [Pontiac]."

The majority opinion holds as a matter of law that the second stop of the Ford LTD was unreasonable, but that the trial court could properly find that from the combination of circumstances there was reasonable suspicion for officers to make the second stop of the Pontiac Trans Am driven by Defendant. I concur with this portion of the majority opinion; however, it is at this point that our views diverge.

Despite the majority's conclusion that the trial court could reasonably determine that the second stop of Defendant's car was lawful and that the trial court could reasonably find lawful consent was given by Defendant for the search of his car, the majority opinion finds that the trial court erred in denying Defendant's motion to suppress and that the case should be remanded in order to conduct a second evidentiary suppression hearing, where, "[a]ssuming that Defendant has standing to challenge [the seizure of evidence from the second vehicle in which Defendant was not an occupant], the evidence from the [Pontiac] Trans Am [driven by Defendant] was also subject to suppression as the fruit of that unlawful stop." Op. at 186, 889 P.2d at 221.

The result reached by the majority, in my view, incorrectly concludes that Defendant is not required to prove, as a threshold matter incident to his motion to suppress, that he had a reasonable expectation of privacy in the contents of a second vehicle. Defendant did not testify at the suppression hearing and presented no evidence that he was the driver or a passenger of the second car, or that he was the owner, lessor, or bailee of such car or its contents. The majority holds that absent an objection or challenge by the State at trial or a motion to suppress of Defendant's standing to assert his Fourth Amendment right, the State may not raise the issue on appeal, even where Defendant failed to offer any proof at the hearing below that he had a reasonable expectation of privacy in the second car. Here, the State prevailed below, and the trial court denied Defendant's motion to suppress on other grounds.

In my view, the result adopted by the majority concerning the search of the second car departs from the long-standing rule applied by this Court that a defendant may claim the benefit of the exclusionary rule only if the person demonstrates a violation of *his* or *her* Fourth Amendment rights, or rights under Article II, Section 10 of the New Mexico Constitution. *State v. Gardner,* 95 N.M. 171, 175, 619 P.2d 847, 851 (Ct.App.), *cert. denied* (N.M. Oct. 6, 1980); *see also State v. Esquerra,* 113 N.M. 310, 313, 825 P.2d 243, 246 (Ct.App.1991); *State v. Villa-*

nueva, 110 N.M. 359, 365, 796 P.2d 252, 258 (Ct.App.), *cert. denied,* 110 N.M. 260, 794 P.2d 734 (1990); *State v. Hensel,* 106 N.M. 8, 9, 738 P.2d 126, 127 (Ct.App.), *cert. denied,* 105 N.M. 720, 737 P.2d 79, *and cert. denied,* 484 U.S. 958, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987); *State v. Donaldson,* 100 N.M. 111, 118, 666 P.2d 1258, 1265 (Ct.App.), *cert. denied,* 100 N.M. 53, 665 P.2d 809 (1983); *State v. Waggoner,* 97 N.M. 73, 75, 636 P.2d 892, 894 (Ct.App.1981); *State v. Ellis,* 88 N.M. 90, 92, 537 P.2d 698, 700 (Ct.App.1975), *overruled on other grounds by State v. Espinosa,* 107 N.M. 293, 298, 756 P.2d 573, 578 (1988).

As observed in *United States v. Rubio–Rivera,* 917 F.2d 1271, 1274 (10th Cir.1990):

Given the personal nature of interest protected, standing is a matter of substantive fourth amendment law. *Rakas v. Illinois,* 439 U.S. 128, 139–40, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978). A defendant may not challenge an allegedly unlawful search or seizure unless he demonstrates that his own constitutional rights have been violated. *United States v. Boruff,* 909 F.2d 111, 115 (5th Cir.1990). Standing is not conferred vicariously; even if the fourth amendment rights of a third party have been violated, a district court may not suppress evidence unless the defendant has met his burden of proving that the challenged search or seizure infringed on his personal fourth amendment interests.

In *Rakas v. Illinois,* 439 U.S. 128, 148, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978), the United States Supreme Court rejected a challenge to the validity of the search and seizure of evidence from a vehicle in which the defendant, Rakas, was a passenger. The Court reaffirmed the rule articulated in *Simmons v. United States,* 390 U.S. 377, 389, 88 S.Ct. 967, 973, 19 L.Ed.2d 1247 (1968), that "the 'rights assured by the Fourth Amendment are personal rights, [which] ... may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure.'" *Rakas,* 439 U.S. at 138, 99 S.Ct. at 427 (quoting *Simmons,* 390 U.S. at 389, 88 S.Ct. at 973). Here, Defendant presented no evidence at the motion to suppress that he had any standing to object to the stop, search, or seizure of the Ford LTD or its contents.

This Court has previously held that once a defendant has established that the state stopped his vehicle and conducted a warrantless search and seizure, the state has the burden of coming forward with evidence to show that there was a valid basis for the stop and that the search and seizure came within the ambit of a recognized exception to the search warrant requirements imposed by the Fourth Amendment. *State v. Mann,* 103 N.M. 660, 663, 712 P.2d 6, 9 (Ct.App.1985), *cert. denied,* 103 N.M. 740, 713 P.2d 556 (1986). However, where a defendant moves to suppress evidence, he bears the burden of proof of establishing that he has a legitimate expectation of privacy in the place where the search occurred. *See Gardner,* 95 N.M. at 175, 619 P.2d at 851 (defendants had burden of coming forward with evidence sufficient to raise issue as to the claimed illegal search and seizure); *see also State v. Jones,* 68 Wash.App. 843, 845 P.2d 1358, 1360, *review denied,* 122 Wash.2d 1018, 863 P.2d 1352 (1993). *See generally* 4 Wayne R. LaFave, *Search and Seizure* § 11.2(b), at 221 (2d ed.1987) (most courts follow *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) and place the burden on the defendant to establish standing).

I also disagree with that portion of the majority's opinion which reverses the trial court's ruling denying Defendant's motion to suppress, which offers Defendant a second opportunity to prove standing, and invites him to argue the adoption of a rule of "co-conspirator standing" or "automatic standing." This Court in *Waggoner,* 97 N.M. at 75, 636 P.2d at 894, the United States Supreme Court in *United States v. Padilla,* 508 U.S. ——, —— – ——, 113 S.Ct. 1936, 1938–39, 123 L.Ed.2d 635, 640–41 (1993) (per curiam), and most other jurisdictions that have examined this issue following the Supreme Court's decision in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), have rejected the rule of co-conspirator or automatic standing. *See State v. Carter,* 74 Wash.App. 320, 875 P.2d 1, 3–5 (1994). Although the majority disclaims any opinion as to whether Article II, Section 10 of our

state constitution extends a right of automatic standing on the part of an alleged co-conspirator to challenge the search and seizure of items from the vehicle of a third party, their reversal of the trial court's ruling on the motion to suppress expressly invites the trial court to litigate an issue not specifically raised below. I do not believe the framers of our constitution intended that Article II, Section 10 would encompass the right of automatic standing on the part of the driver of a vehicle to object to the search of a second vehicle where he has failed to present evidence that his own constitutional rights were violated.

While I agree that proof of standing is not jurisdictional, I believe the majority has erred in determining that absent an objection to a defendant's standing by the state, a defendant, who has filed a motion to suppress, need not offer any evidence of his standing to challenge the search and seizure of evidence from the possession of a third party. I would hold, consistent with *United States v. Padilla* and *Rakas v. Illinois,* and following the rationale of the decisions of this Court in *Villanueva, Waggoner,* and *Gardner,* that proof of an individual's substantive rights under the Fourth Amendment or Article II, Section 10 of the New Mexico Constitution is generally a threshold matter required to be proved by a defendant. *See, e.g., United States v. Smith,* 621 F.2d 483, 486 (2d Cir.1980) (threshold question in motion to suppress is whether the defendant had legitimate expectation of privacy in area searched or articles seized), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981); *United States v. Erwin,* 875 F.2d 268, 270 (10th Cir.1989) (the defendant has burden to show challenged search and seizure infringed *his* personal Fourth Amendment interests); *State v. McCarthy,* 258 Mont. 51, 852 P.2d 111, 113 (1993) (the defendant bears the burden of proving that he had a legitimate expectation of privacy in the vehicle); *State v. MacDonald,* 105 Or.App. 102, 803 P.2d 1211, 1213 (1990) (the defendant has the burden to establish a protected right in the particular item of property before he can challenge the alleged violation), *review denied,* 311 Or. 433, 812 P.2d 828 (1991); *Sullivan v. State,* 564 S.W.2d 698, 704 (Tex.Crim.

App.1978) (en banc) (state does not have burden of asserting every possible basis for upholding legality of search).

I would follow the approach taken by the court in *Carter,* 875 P.2d at 3. In *Carter,* like here, the state failed to challenge the defendant's standing to object to the search and seizure of evidence obtained from the premises occupied by a third party. At trial Carter failed to offer evidence of a possessory interest in the seized evidence, and the court denied the motion to suppress. The defendant asserted that she had automatic standing to challenge the warrantless entry of the premises. On appeal, the *Carter* court held:

> The State did not raise [the issue of the defendant's lack of standing] at trial. However, it is properly considered on appeal. *State v. Grundy,* 25 Wash.App. 411, 415–16, 607 P.2d 1235 (1980), *review denied,* 95 Wash.2d 1008 (1981) (although the State may not raise the issue of a defendant's standing where it is an appellant, it may raise the issue for the first time on appeal as a respondent because the appellate court has a duty to affirm on any ground supported by the record, even if it is not the ground relied on by the trial court).

*Id.,* 875 P.2d at 3 n. 2; *see also Sullivan,* 564 S.W.2d at 704–05; *State v. Munoz,* 111 N.M. 118, 120, 802 P.2d 23, 25 (Ct.App.) (reviewing court will not disturb trial court's denial of motion to suppress if supported by substantial evidence, unless it appears trial court's ruling was erroneously premised), *cert. denied,* 111 N.M. 136, 802 P.2d 645 (1990).

The majority, citing *State v. Franks,* 119 N.M. 174, 889 P.2d 209 (Ct.App.1994), reasons that it would be unfair to an appellant to affirm on a fact-dependent ground not raised below because it lacked an opportunity to present evidence relating to the facts. *Franks,* however, is distinguishable from the instant case because it did not involve a question of standing or the issue of "automatic standing." I would apply the rule in *Carter,* 875 P.2d at 3 (where trial court denied motion to suppress, state may challenge on appeal the defendant's lack of standing; however, rule is to contrary where state is the appellant and failed to raise issue of standing

below). Moreover, considering that Defendant's motion to suppress only referred to the evidence in the vehicle driven by him, Defendant was not misled by the State's failure to raise the issue of standing at trial. This Court has previously applied the rule that it will affirm the trial court if it is right for any reason. *See State v. Lovato*, 112 N.M. 517, 521, 817 P.2d 251, 255 (Ct.App.), *cert. denied*, 112 N.M. 388, 815 P.2d 1178 (1991); *see also Jaramillo v. Jaramillo*, 113 N.M. 57, 62, 823 P.2d 299, 304 (1991) (lower court's decision will be affirmed if it was correct, even if court applied an incorrect rationale).

In sum, I disagree with the majority opinion remanding the cause for a new suppression hearing and inviting Defendant to assert the claim of automatic standing. I would hold that Defendant's failure to present any evidence at the motion to suppress, indicating that he possessed a reasonable expectation of privacy in the evidence seized from the second vehicle, resulted in a failure by him to establish that his Fourth Amendment rights, or rights under Article II, Section 10 of the New Mexico Constitution, were violated.