689 P.2d 193

**Cyril James WARRILOW, as representative underwriter of those Underwriters at Lloyds Subscribing Master Policy, POP 100–82; North American Claims Management Company; Kirke-Van Orsdel, Inc.; Kirke-Van Orsdel Insurance Services, Inc.; and National Rifle Association, Petitioners,**

v.

**SUPERIOR COURT OF the STATE OF ARIZONA, In and For the COUNTY OF PIMA; Honorable Lina S. Rodriguez, a Judge Thereof; Bradley B. Jones and Linda Jones, husband and wife, Real Parties in Interest, Respondents.**

No. 2 CA–SA 0100.

Court of Appeals of Arizona, Division 2.

Sept. 28, 1984.

Lesher & Borodkin, P.C. by Stephen H. Lesher, Tucson, for petitioners.

Croswell & Cornelio by Carmine Cornelio, Tucson, for real parties in interest.

## OPINION

BIRDSALL, Chief Judge.

This special action was taken from the trial court's denial of the petitioners' motion for summary judgment. Because we conclude that the trial court erred in denying the motion, and because petitioners have no adequate remedy by way of appeal, we assume jurisdiction and grant relief.

In December 1981, real party in interest Bradley Jones obtained a "Voluntary Excess Firearms Protection" insurance policy for certain firearms owned by him. The policy was issued by petitioner Underwriters at Lloyds, subscribing Master Policy POP 100/82, and was made available to individual members of petitioner National Rifle Association, which was also named as an insured on the policy. The policy provided for $5,000 coverage on unscheduled firearms and $38,400 coverage for scheduled firearms described in the policy declarations. In January 1982, Jones filed a claim in the amount of $44,300 following a burglary of his house, which claim was paid by the insurer in May 1982.[1] Jones then apparently eliminated the scheduled coverage and increased the unscheduled coverage to $20,000.

Claiming that his house was again burglarized on June 4, 1982, Jones submitted a proof of loss dated August 31, 1982, to the insurer in accordance with the policy requirements. Attached to this document was a list of 60 items allegedly stolen and, although the total actual cash value of these items was stated to be $20,045, individual values were not set forth for each item and the total of those given was considerably less than $20,045.

By letter dated October 27, 1982, petitioner North American Claims Management Company, on behalf of the Lloyds Underwriters, acknowledged receipt of Jones's proof of loss as being in compliance with the filing requirements of the policy, but rejected it as insufficient for the following reasons:

(1) There is no documentation verifying ownership of the firearms.

(2) There is no documentation verifying the values of these firearms.

(3) The value stated on the Proof of Loss does not correspond with the amount

---

1. The discrepancy between the apparent amount of coverage and the amount paid on this claim is unexplained and not at issue here.

of the claim presented on the Proof of Loss.

(4) Under Condition 12 of the policy, Underwriters would like to have you submit to an examination under oath.

The letter further reserved all rights and defenses of the insurer "in connection with the ascertainment as to the value and loss, if any. . . ."

The referenced Condition 12 provides as follows:

## XII. EXAMINATION UNDER OATH

The Insured, as often as may be reasonably required, shall exhibit to any person designated by the Underwriters all that remains of any property insured hereunder and shall submit, and insofar as it is within his or her power cause his or her employees, members of the household and others to submit to examinations under oath by any person named by the Underwriters and subscribe the same; and, as often as may be reasonably required, shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if original be lost, at such reasonable time and place as may be designated by the Underwriters or their representative, and shall permit extracts and copies thereof to be made. No such examination under oath or examination of books or documents, nor any other act of the Underwriters or any of their employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which the Underwriters might otherwise have with respect to any loss or claim but all such examinations and acts shall be deemed to have been made or done without prejudice to the Underwriters' liability.

Pursuant to this provision, Jones's sworn statement was taken by an attorney for the insurer in November 1982. Jones was represented by an attorney during these proceedings. The portions of the transcribed statement which were appended to petitioners' motion for summary judgment [2] show that Jones refused to answer a number of the questions put to him concerning the number of guns he owned, whether or not he sold any of the guns he had purchased, and the source of his income. The transcript shows that Jones's attorney instructed him not to answer on the grounds that the information sought was either irrelevant or immaterial or both, arguing that "[t]he issue is did he own the guns that were stolen, did he possess them when they were stolen. And these other matters, I don't see how they're relevant." Counsel for the insurer, on the other hand, advised Jones on at least three occasions that his refusal to answer might be deemed a failure to cooperate which might cause the insurer to void its coverage.[3]

---

2. We have not been provided with a copy of the entire transcript nor, presumably, was the trial court. Since the real parties in interest have not argued otherwise, we assume that the portions of the transcript in the record accurately reflect the testimony and that the information sought by the petitioners was not provided elsewhere in the statement.

3. Q. Are you aware that the company may take the position that this is a failure to cooperate under your policy of insurance and that in and of itself may void your policy? I feel I must tell you that at this time because this is relevant information as far as the policy is concerned. It goes directly to the issue of motive. And it also goes to the issue of whether or not you had those coins. I know you're in a Catch 22, but I didn't put you there.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. (BY MR. MITCHELL) Again, Mr. Jones, this may well end up in your policy being voided because of noncooperation. Since guns are one of the things that are listed as having been stolen, they feel that they are entitled to know the background, the number, how active you've been in this business, where they're purchased, where they're sold. Things of that nature.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. (BY MR. MITCHELL) As I told you last time, the two time periods are critical. The companies are looking both at the January theft, and your '81 income would be relevant to determine your financial situation as of that time, and would also be relevant in determining what your financial situation would have been in June of '82. That's the only reason I'm asking. That's why I'm not going back any further. Now if you still wish to instruct him not to answer, I must advise you

It appears that nothing further transpired on the claim until the real parties in interest filed their complaint in superior court in March 1983. Following initial discovery, cross motions for summary judgment were filed, both of which were denied. The denial of the real parties in interest's motion is not at issue here.

■ The petitioners' motion for summary judgment was based on their contention that Jones's refusal to answer the insurer's questions concerning the number of guns he owned, whether he had sold any guns, and the source of his income was a breach of his obligation under Condition 12 of the insurance contract to cooperate with the insurer, which constituted a complete defense to his claim of coverage. Condition 12 is a standard provision usually found in insurance contracts of this nature, and the law is well settled that a failure or refusal of the insured to comply with his obligation of cooperation under such a provision will constitute a bar to any recovery against the insurance company. *See Home Insurance Co. v. Balfour-Guthrie Insurance Co.*, 13 Ariz.App. 327, 476 P.2d 533 (1970).

■ In the context of the requirement that the insured submit to a sworn examination, it appears that the only limitation is that the questions be material to the circumstances surrounding the insurer's liability and the extent thereof. *See generally* Appleman, 5A Insurance Law and Practice, § 3552 (1970), and cases cited therein. Although lack of relevance and materiality were the stated bases for counsel's objections to the unanswered questions posed by the insurer at the time the sworn statement was taken, these grounds were not urged before the trial court in opposition to petitioners' motion for summary judgment, nor before this court, and we therefore deem them to be waived. Even if the objections had been preserved, however, the information sought was clearly material to the insurer's liability, in light of the policy's express exclusion of coverage of property pertaining to the business of a commercial gun dealer, as well as the policy's require-

ment that the insured provide satisfactory proof of interest in the property and its loss.

■ In opposition to petitioners' motion, the real parties in interest presented two arguments: 1) that the petitioners did not raise the issue of noncooperation until after they had rejected the claim, and therefore had waived this defense or were estopped from raising the same, and 2) that Jones had a right to refuse to answer based on his constitutionally protected privilege against self-incrimination. The first argument is completely unfounded. The basis for the contention that the insurer rejected the claim prior to raising the noncooperation defense is the October 27, 1982, letter of the insurer's representative. Even a cursory reading of this letter shows that the proof of loss, not the entire claim, was rejected as being insufficient. There is no evidence whatsoever that the insurer ever rejected the claim prior to the initiation of this lawsuit.

■ As to the second argument, the real parties in interest contend that Jones was entitled to invoke the Fifth Amendment privilege with regard to questions pertaining to whether or not he was in fact a commercial gun dealer, inasmuch as 18 U.S.C. § 922 makes such activity a criminal offense in the absence of the requisite federal license, which Jones admits he did not possess. They further contend that Jones fully cooperated with the petitioners except with respect to this allegedly privileged information, which they contend could have been obtained by means other than Jones's sworn statement. Finally, the real parties in interest assert that the existence of the privilege is a question which only the court can decide, and that if it decides that Jones has no legitimate claim of privilege, he will provide the requested testimony.

Even assuming that the real parties in interest have adequately established that the questions asked by the insurer during the sworn examination gave Jones reason-

that this may be grounds to void the policy and you would have no coverage.

able cause to apprehend danger that his answers might prove incriminatory, *see Phelps Dodge Corp. v. Superior Court in and for County of Cochise,* 7 Ariz.App. 277, 438 P.2d 424 (1968), it is clear that the protection afforded by the Fifth Amendment had no application to the proceeding. In *Hickman v. London Assurance Corp.,* 184 Cal. 524, 195 P. 45 (1920), the California Supreme Court addressed this same issue in the context of an action by an insured to recover the proceeds of a fire insurance policy. Pursuant to a policy provision similar to Condition 12, the insurer attempted to examine the insured under oath, but the latter refused to answer, invoking the privilege against self-incrimination. In holding the privilege inapplicable, the court reasoned as follows:

> ... The compulsion secured against by the Constitution is a compulsion exercised by the state in a sovereign capacity in some manner known to the law. *Constitutional immunity has no application to a private examination arising out of a contractual relationship.* The examination to which appellants demanded respondent should submit was an extrajudicial proceeding, not authorized by any constitutional or statutory provision, but purely by virtue of a contract between the parties. *To bring a case within the constitutional immunity, it must appear that compulsion was sought under public process of some kind.* This being so, respondent's refusal to undergo examination and produce his books and papers acquires no sanctity because he urged his constitutional right not to be compelled to be a witness against himself. The demand was made upon him by virtue of the stipulation in the contract and by the stipulation alone must his refusal be judged. The stipulation constituted a promissory warranty under which appellants had the right to demand compliance by respondent "as often as required," and the performance of such stipulation was a condition precedent to any right of action.... The obligation to perform the warranty was as binding on respondent as his obligation

to pay the premiums on the policies. The respondent did not fulfill his obligation, and stands here as having recovered a judgment upon an express contract one of the conditions of which he has failed to perform; in other words, when he commenced this suit he was without a cause of action. 195 P. at 49 (emphasis supplied).

We agree with the reasoning of the California Supreme Court and find it equally persuasive in the present case. As in *Hickman,* the "compulsion" to respond arose not from any governmental action, but rather solely from the terms of the parties' contract. The privilege was therefore inapplicable, and Jones had no right to refuse to answer on that basis.

The cases cited by the real parties in interest in support of Jones's invocation of the privilege are inapposite. In *In-Towne Restaurant v. Aetna Casualty and Surety Co.,* 9 Mass.App. 534, 402 N.E.2d 1385 (1980), the issue before the court was whether the invocation of the Fifth Amendment at a deposition constituted a breach of a provision of the policy rendering the same void if the insured wilfully concealed or misrepresented any material fact or circumstance. Pursuant to Massachusetts law, the policy did not contain a separate clause requiring sworn examinations. Further, the defendants had taken no action to compel answers, and had waited until the last day of the trial to file a motion for directed verdict on the basis of the refusal to answer. *Agricultural Insurance Co. v. Iglehart,* 386 P.2d 145 (Okla.1963) and *Knight v. Firemen's Insurance Co.,* 227 Mo.App. 426, 49 S.W.2d 682 (1932) do not involve a refusal to answer based on the Fifth Amendment.

The real parties in interest argue that the applicability of the privilege was an issue which only the court could decide, citing *Phelps Dodge Corp. v. Superior Court in and for County of Cochise, supra,* and *Thoresen v. Superior Court in and for Maricopa County,* 11 Ariz.App. 62, 461 P.2d 706 (1969). They further argue that since Jones answered all other

questions of the insurer and will respond to the remaining questions if the court determines that the privilege is inapplicable, he cannot be deemed to have breached the requirement of cooperation set forth in Condition 12 so as to preclude recovery. We disagree.

The cases cited by the real parties in interest both involve the assertion of the privilege in relation to discovery undertaken as a part of ongoing litigation. The language in both opinions pertaining to the authority of the court to decide the applicability of the privilege is intended to negate the proposition that a witness may be the sole judge of whether a sufficient basis exists for invoking the privilege. Neither case stands for the proposition that a party to a contract can only be in breach of its terms after a judicial determination that his actions constitute a breach and he has thereafter failed to remedy the same.

This precise situation was before the court in *Dyno-Bite, Inc. v. Travelers Cos.*, 80 A.D.2d 471, 439 N.Y.S.2d 558 (1981). The plaintiffs had filed a claim on a fire insurance policy issued by the defendants, who attempted to take the sworn statements of several officers of the plaintiff corporations pursuant to the provisions of the policy. One officer failed to appear, and another refused to answer a number of questions, both on the basis of the privilege against self-incrimination. One of the officers had been charged with arson in connection with the fire. In opposition to the defendants' motion for summary judgment, the plaintiffs argued that they had complied with the requirements of the policy because some of their officers had testified and others had agreed to do so at a later date. In rejecting this argument, the court stated:

> ... By its terms the insured promises to render full and prompt assistance to discover the facts surrounding the loss and anything less results in a breach of contract. Plaintiffs' obligation of cooperation is not met by Shosho's partial testimony ... or by promises of evidence to be supplied in some indefinite future when the criminal proceedings are concluded. 439 N.Y.S.2d at 560–561 (citations omitted).

*See also Standard Insurance Co. v. Anderson*, 227 Miss. 397, 86 So.2d 298 (1956).

In sum, Jone's refusal to answer during the sworn examination was not protected by the privilege against self-incrimination and constituted a breach of the terms of the insurance contract which, as a matter of law, bars any recovery on his claim. The order of the trial court denying petitioners' motion for summary judgment is vacated, and the case is remanded to the trial court with directions to enter summary judgment in favor of the petitioners.

HATHAWAY and HOWARD, JJ., concur.