890 P.2d 823

**Elsayad Zein ELDIN and Anna Patterson d/b/a Albuquerque Audio, Plaintiffs–Appellants,**

v.

**FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, a Kansas Corporation, Defendant–Appellee.**

No. 15638.

Court of Appeals of New Mexico.

Dec. 29, 1994.

Alexander A. Wold, Jr., Alexander A. Wold, Jr., P.C., Albuquerque, for plaintiffs-appellants.

C. Kristine Osnes, Eric Scott Jeffries, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for defendant-appellee.

## OPINION

PICKARD, Judge.

Insureds, Eldin and Patterson, appeal from the trial court's order granting sum-mary judgment in favor of Farmers Alliance Mutual Insurance Company (Farmers). Farmers contended that it was not required to pay on its business insurance policy with Insureds because of Insureds' fraud, conceal-ment, and misrepresentation in their proof of loss for items stolen from their business and because of Insureds' failure to cooperate in the investigation of that claim. We reverse.

## BACKGROUND

Insureds owned an audio store, Albuquer-que Audio. Farmers issued a business own-er's common insurance policy to Insureds, which covered them against theft. The poli-cy contained the following provision:

> This policy is void in any case of fraud by you at any time as it relates to this policy. It is also void if you or any other insured, at any time, intentionally conceal or misre-present a material fact concerning: 1. This policy; 2. The Covered Property; 3. Your interest in the Covered Property; or 4. A claim under this policy.

The policy also contained a provision stating that, in the event of a claim of loss, Insureds had a duty to cooperate with Farmers' inves-tigation of the claim, among other ways, by specifically answering questions under oath related to the claim.

Insureds subsequently filed a claim on the policy, alleging that their store had been burglarized. Insureds' sworn proof of loss statement claimed that the value of the items lost in the burglary was $45,797.19. In-sureds documented a portion of their valua-tion of the claim by submitting eight invoices of merchandise costing $10,938. According to the invoices, this merchandise (the "ques-tioned merchandise") was purportedly pur-chased by Insureds on four different occa-sions from a store called Super Sound. The sworn statement included the language "no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss." Farmers questioned Insured Eldin under oath about the claim. At the start of the examination, Insureds' initial attorney in this case stated that the claims for the questioned merchan-dise were being withdrawn and advised Eldin not to answer questions regarding that mer-

chandise. No concerns were ever raised concerning the balance of the claim. Concluding that the eight invoices were fictitious, Farmers denied Insureds' entire claim.

Insureds then instituted this action against Farmers for recovery of their claimed loss. Farmers moved for summary judgment, arguing that it did not need to pay on the policy because Insureds breached both the provisions regarding fraud, misrepresentation, and concealment as well as the provision requiring the cooperation by the insured. In response, Insureds conceded that the questioned merchandise had not in fact come from Super Sound, but insisted that this merchandise was nonetheless stolen in the burglary. Insureds also asserted through affidavit that Eldin speaks English poorly and as a result was under the mistaken impression that Farmers would accept the Super Sound invoices as proof of his loss. According to his affidavit, Eldin had informed Farmers that invoices for some of the stolen merchandise were also stolen in the burglary and when Farmers told him that he had to produce invoices, he understood that Farmers would accept invoices prepared for the purpose of the claim. Eldin maintained that the questioned invoices accurately reflected the prices of merchandise that was indeed stolen. Consequently, Insureds argued that they had not intended to defraud Farmers.

At the hearing on the motion, Insureds relied on the Supreme Court's decision in *Foundation Reserve Insurance Co. v. Esquibel*, 94 N.M. 132, 607 P.2d 1150 (1980). In *Foundation Reserve*, the Supreme Court considered whether an insurer could void a liability policy because of an insured's breach of the policy's fraud and cooperation provisions when the claim made on the policy was by an innocent third party injured by the insured. The Supreme Court apparently focused only on the cooperation provision, *see Sanchez v. Kemper Ins. Cos.*, 96 N.M. 466, 467, 632 P.2d 343, 344 (1981), and held that an "insuror must demonstrate substantial prejudice as a result of a material breach of the insurance policy by the insured before it will be relieved of its obligations under a policy," *Foundation Reserve*, 94 N.M. at 134,

607 P.2d at 1152. The *Foundation Reserve* court also included the following language in its decision: "The risk-spreading theory of liability 'should operate to afford to affected members of the public—frequently innocent third persons—the maximum protection possible consonant with fairness to the insurer.'" *Id.* (quoting *Oregon Auto. Ins. Co. v. Salzberg*, 85 Wash.2d 372, 535 P.2d 816, 819 (1975)). Seeing the policy considerations in *Foundation Reserve* as different from those in the present action, the trial judge in this case believed that *Foundation Reserve* addressed "the need for prejudice in a liability policy only," and therefore found that case to be inapplicable. The trial judge also indicated that Insureds' affidavits were conclusory and tardy in their explanation of the false invoices. Accordingly, the trial judge granted Farmers' motion for summary judgment.

On appeal, we consider whether Farmers was required to show substantial prejudice as a result of Insureds' alleged breaches of the provisions at issue, and whether the grant of summary judgment in favor of Farmers was appropriate as to each provision.

## DISCUSSION

### A. The Substantial Prejudice Requirement is Not Limited to Cases Involving Injuries to Innocent Third Parties

Farmers contends that it need not show substantial prejudice as a result of Insureds' alleged breaches of the insurance policy. In this regard, Farmers echoes the trial judge's view of the holding in *Foundation Reserve*. Essentially, Farmers argues that *Foundation Reserve* is inapplicable to the present case because the Supreme Court's ruling was meant to protect innocent third parties from a breach of an insurance policy over which they have no control, not to protect the insured who is guilty of the breach. However, we believe that the Supreme Court's most recent treatment of the substantial prejudice issue, *Roberts Oil Co. v. Transamerica Ins. Co.*, 113 N.M. 745, 833 P.2d 222 (1992), proves Farmers to be mistaken.

In *Roberts Oil*, the Supreme Court considered whether a showing of prejudice was required before a liability policy could be avoided for the insured's breach of the poli-

cy's "voluntary payment" provision. The facts of *Roberts Oil* were that Roberts was liable for a gas leak at a filling station and both it and a subsequent insurer paid large sums of money to abate the groundwater contamination caused thereby. Prior insurers declined to indemnify Roberts or reimburse the subsequent insurer because of their claim that Roberts breached a clause prohibiting it from voluntarily making any payment, assuming any obligation, or incurring any expense in connection with the event. 113 N.M. at 746–47, 833 P.2d at 223–24. Much as Farmers does now, the insurer in *Roberts Oil* attempted to distinguish the broad holding of *Foundation Reserve* on the ground that no innocent third party was hurt because of the insured's breach. 113 N.M. at 751, 833 P.2d at 228. Rejecting this argument, the Supreme Court stated the following:

> We think that the rationale behind [*Foundation Reserve* ] cannot be limited so narrowly. At the beginning of that opinion, we stated the issue as follows: "Is a substantial and material breach of the insurance contract by the insured sufficient to void his policy, or must the insurer also demonstrate actual prejudice to the insurer resulting from the breach?" 94 N.M. at 132, 607 P.2d at 1150. *There is no indication in the opinion, nor any in the many other cases requiring a showing of actual prejudice, that the rule operates only when an innocent third party is or has been injured.* Rather, the rule implements a fundamental characteristic of all, or nearly all, insurance contracts—namely, the essential nature of the contract as a promise by the insurer to indemnify and defend the insured against certain risks, in exchange for the insured's payment of the premium.

*Id.* (emphasis added). The Court went on to indicate that *Foundation Reserve* could not be distinguished, and the substantial prejudice rule could not be avoided, simply because a provision other than a cooperation clause is at issue. *Id.*

Consequently, *Roberts Oil* makes it clear that the substantial prejudice requirement may be extended to cases, such as the present one, in which an insured's alleged breach of a policy condition does not have the effect of injuring an innocent third party, and in which different policy provisions are at issue. We next consider whether substantial prejudice must be shown with regard to the four specific types of breach Farmers alleges Insureds have committed: fraud, misrepresentation, concealment, and noncooperation.

**B.** *Substantial Prejudice Need Not Be Shown in Cases of Fraud By the Insured*

■ As we have shown, the holding in *Roberts Oil* requiring a showing of substantial prejudice before a policy may be avoided for breach appears to be quite broad. Nonetheless, we do not think that the rule extends to an insured's material breach of a fraud provision. Other kinds of policy provisions may deal with an innocent motive for an insured's breach, and therefore strict enforcement of those provisions might frustrate a consumer's reasonable expectation that coverage will not be denied arbitrarily. *See id.* 113 N.M. at 752, 833 P.2d at 229. However, strong public policy considerations prevent us from saying the same for fraud. As explained in *American Diver's Supply & Manufacturing Corp. v. Boltz,* 482 F.2d 795 (10th Cir.1973):

> [I]f the law out of some misgivings about forfeitures, were to require that the insurer demonstrate that it has been misled to its prejudice by the fraud, the policy provision would be virtually worthless and put a premium on dishonest dealings by the assured. For if, by its own investigation, inspired perhaps by suspicions of the assured's efforts to misrepresent, the insurer satisfied itself that a fraud had been attempted and declined to pay, such a rule would mean that the assured's claim would then stand as though no dishonest acts whatsoever had been practiced. The mendacious assured, surveying the possibilities and contemplating prospective tactics and strategy in the handling of his claim, would sense immediately that *vis-a-vis* himself and the underwriter, there would be no risk at all in his deceit. If it worked, he would have his money and, at worst, could be compelled to disgorge only by affirmative suit by the insurer if the fraud were

discovered in time to be legally or practicably effective. If it didn't work—if, before consummation, fraud was detected—he would suffer no disadvantage whatsoever. *It would be an everything-to-win, nothing-to-lose proposition.*

*Id.* at 797 (quoting *Chaachou v. American Cent. Ins. Co.,* 241 F.2d 889, 892–93 (5th Cir.1957)).

We find further support for this holding from the fact that those jurisdictions considering the issue appear to have come to the same conclusion. *See, e.g., Longobardi v. Chubb Ins. Co. of New Jersey,* 121 N.J. 530, 582 A.2d 1257, 1263 (1990); *Henricksen v. Home Ins. Co.,* 237 Or. 539, 392 P.2d 324, 326 (1964); *St. Paul Mercury Ins. Co. v. Salovich,* 41 Wash.App. 652, 705 P.2d 812, 815–16 (1985). *See generally* Robert M. Ey, Annotation, *Cause of Action Against Insurer to Recover Benefits for Fire Loss,* 15 C.O.A. 213, § 19 (1988 & Cum.Supp.1993); Annotation, *Overvaluation in Proof of Loss of Property Insured as Fraud Avoiding Fire Insurance Policy,* 16 A.L.R.3d 774, § 10 (1967 & Supp.1993).

■ However, even though Farmers does not have to demonstrate substantial prejudice as a result of a material breach of the fraud provision, we believe that a genuine issue of material fact exists concerning whether the fraud provision in this case was breached. Insured Eldin asserted through affidavit that at the time he provided the Super Sound invoices to Farmers he believed he was complying with Farmers' requests for documentation (of any sort) for his real losses. Whether to believe Eldin's testimony or find that it was fabricated in a tardy attempt to cover up a fraud is a question for the fact finder to decide. *See Leyba v. Whitley,* 118 N.M. 435, 437, 882 P.2d 26, 37 (Ct.App.1994), *cert. granted,* 118 N.M. 430, 882 P.2d 21 (1994); *Maxey v. Quintana,* 84 N.M. 38, 42, 499 P.2d 356, 360 (Ct.App.) (intent element of fraud is a question for the jury where its determination depends on credibility of the witnesses), *cert. denied,* 84 N.M. 37, 499 P.2d 355 (1972). Consequently, because the jury should decide whether Insureds intended to defraud Farmers, summary judgment was improper with respect to Farmers' claim that

the policy can be avoided on the basis of Insureds' fraud.

C. *Substantial Prejudice Must Be Shown in Cases of Misrepresentation, Concealment, and Noncooperation by the Insured*

■ In contrast to the issue of fraud, there appears to be no factual dispute as to whether Insureds breached the policy provision against misrepresentation; the Insureds admit that the items which they stated came from Super Sound did not in fact come from that store. Similarly, there appears to be no factual dispute concerning breach of the concealment and noncooperation provisions because Insureds admit that upon examination they refused to answer questions pertaining to the items listed on the Super Sound invoices. However, unlike the issue of fraud, we believe that Farmers may avoid the policy only if it can show that it has been substantially prejudiced by these breaches of the policy.

Initially, the policy considerations that prompt us not to require prejudice for fraud do not necessarily exist with regard to the misrepresentation in this case. Fraud, by necessity, involves deception by Insureds to obtain proceeds to which they knew they were not entitled. However, Insureds allege that their misrepresentations were based on a good faith belief that they were conforming to Farmers' requests. Insureds insist that they did lose the inventory, and therefore they are entitled to the proceeds. In other words, taking the Insureds at their word, there was a misrepresentation, but without fraud.

If the facts are as Insureds allege, avoidance of the policy without a showing of substantial prejudice to Farmers would be contrary to "the essential nature of the contract as a promise by the insurer to indemnify and defend the insured against certain risks, in exchange for the insured's payment of the premium." *Roberts Oil,* 113 N.M. at 751, 833 P.2d at 228; *see Springfield Fire & Marine Ins. Co. v. Winn,* 27 Neb. 649, 43 N.W. 401, 402–03 (1889) (insured's misrepresentation, which was not meant to defraud, did not void fire policy; court based its ruling on its

"desire to establish a rule which, while it will protect insurance companies in their just rights, will also shield the insured from the confiscation of their property upon fanciful or insufficient grounds"); *see also Dempsey v. Auto Owners Ins. Co.*, 717 F.2d 556, 560 (11th Cir.1983) (insurance policy may only be avoided for insured's misrepresentations if they were intended to deceive, if they related to matters materially affecting the risk, and if insurer relied upon them to its detriment); *Home Ins. Co. of New York v. Lowenthal*, 36 So. 1042, 1043 (Miss.1904) (fire policy could not be avoided due to insured's overvaluation of claim because insurer could not have been prejudiced thereby; both inflated value and actual value of lost items far exceeded the policy's limits).

Moreover, the additional requirement of substantial prejudice for misrepresentation is necessary to afford complete meaning to the separate terms of the avoidance clause. If misrepresentation alone, without fraudulent intent, were sufficient to avoid the policy in its entirety, the insurer need never allege and prove fraud; fraud as a separate term would be rendered redundant and meaningless, which surely would be contrary to the "reasonable expectation" of the parties. *Roberts Oil*, 113 N.M. at 752, 833 P.2d at 229.

We believe the same is true for Insureds' breach of the concealment provision. The breach occurred because Insureds were advised by their first attorney not to answer questions about the Super Sound invoices. Insureds allege, however, that after obtaining new counsel they offered to be reexamined about the invoices, and that Farmers refused this offer. Although we recognize that a client is bound by the errors of his or her attorney, *Padilla v. Estate of Griego*, 113 N.M. 660, 665, 830 P.2d 1348, 1353 (Ct.App. 1992), we believe that unless it is shown how Farmers was substantially prejudiced by Insureds' breach, strict enforcement of the concealment provision in this case will frustrate Insureds' reasonable expectation that coverage will not be denied arbitrarily, *see Roberts Oil*, 113 N.M. at 752, 833 P.2d at 229.

Finally, as for the cooperation clause, we note that the Supreme Court has already ruled that substantial prejudice must be shown before its breach will avoid a policy. *See Foundation Reserve*, 94 N.M. at 134, 607 P.2d at 1152. The fact that a majority of other jurisdictions, not including those on which we rely, conclude that an insurer need not pay on a policy when the insured totally fails to answer any questions under oath does not alter our opinion. Under the facts of this case, in which Insureds may have understandably refused to answer only some questions, we believe that our Supreme Court would apply the *Roberts Oil* requirement of substantial prejudice for the reasons given in the Nebraska case of *Springfield Fire & Marine Ins. Co.* and thus relieve Insureds of a forfeiture.

Having decided that substantial prejudice must be shown with regard to the misrepresentation, concealment, and cooperation provisions in this case, we must next determine whether summary judgment was appropriately granted. The Court in *Roberts Oil* established that, although the insurer must establish prejudice, a presumption of prejudice arises upon proof of a breach of a policy provision such as those at issue here. 113 N.M. at 755, 833 P.2d at 232. Farmers, however, does not rely on the presumption in this case. Rather, it contends that prejudice need not be shown, a proposition we have rejected. Alternatively, it contends that actual prejudice has been established by the time and expense it has incurred to investigate and defend against this alleged fraud.

Regarding Farmers' claim of actual prejudice, we have previously held that in most cases the issue of substantial prejudice as a result of a breach of an insurance provision is a question for the jury. *See State Farm Fire & Casualty Co. v. Price*, 101 N.M. 438, 445, 684 P.2d 524, 531 (Ct.App.), *cert. denied*, 101 N.M. 362, 683 P.2d 44 (1984), *disapproved of on other grounds, Ellingwood v. N.N. Investors Life Ins. Co.*, 111 N.M. 301, 307, 805 P.2d 70, 76 (1991). The facts of this case show that the alleged breaches involved only a portion of the claim, a portion that the Insureds quickly dropped although the record is unclear whether it has been revived. It appears that much of Farmers' expense was devoted to establishing that the alleged fraud and failure to cooperate as to part of

the claim was sufficient to void the whole policy. Thus, even assuming that Insureds' breaches did prejudice Farmers, we believe that a jury could reasonably infer that this claimed prejudice was not substantial. Consequently, as to Farmer's claim of actual prejudice, we hold that summary judgment was improperly granted. *See Sarracino v. Martinez*, 117 N.M. 193, 194, 870 P.2d 155, 156 (Ct.App.1994) (when evidence is susceptible to reasonable conflicting inferences, summary judgment is improper); *see also Journal Publishing Co. v. American Home Assurance Co.*, 740 F.Supp. 1015, 1021 (S.D.N.Y.1990) (under New Mexico law, substantial prejudice as a result of a breach of an insurance policy is a question for the jury and therefore not properly resolved on a motion for summary judgment).

We finally note that we will not rely on the presumption of prejudice and Insureds' failure to rebut it to affirm this case on a right-for-the-wrong-reason rationale. As we recently pointed out in *State v. Franks*, 119 N.M. 174, 176, 889 P.2d 209, 211 (Ct.App.1994), we will not affirm on a ground not relied on by the trial court if it would be unfair to appellant to do so. This principle of unfairness applies to this case. When the motion for summary judgment was presented below, Insureds relied on *Foundation Reserve* and the factual questions raised by their affidavits regarding the fraud issue. Both Farmers and the trial court relied on their distinction of *Foundation Reserve* as being a case in which the rights of third parties were involved and on the lack of credibility of Insureds' affidavits. No one mentioned any presumption of prejudice, and therefore Insureds were not on notice that they might have to rebut the presumption. Under these circumstances, we should not apply the right-for-the-wrong-reason rationale. *Cf. State v. Porras–Fuerte*, 119 N.M. 180, 184, 889 P.2d 215, 219 (Ct.App.1994) (Court of Appeals will not affirm denial of suppression motion for failure of defendant to show standing when State never raised the issue of standing below).

*CONCLUSION*

For the foregoing reasons, we hold that summary judgment was improperly granted

in this case. Accordingly, we reverse the trial court's order and remand the case for further proceedings. If Farmers wishes to rely on a breach of the fraud provision to void the policy and thus not have to prove prejudice, a trial on the issue of whether Insureds committed fraud is required. If Farmers wishes to rely on a breach of the other provisions to void the policy and is willing to shoulder the burden of proving prejudice, it may move for summary judgment relying on the presumption. The burden will then shift to Insureds to produce evidence showing that Farmers was not prejudiced.

IT IS SO ORDERED.

BOSSON, J., concurs.

HARTZ, J., concurs in part and dissents in part.

HARTZ, Judge (concurring in part and dissenting in part).

I concur in Judge Pickard's opinion through Section B of the Discussion. I also concur in reversing the judgment and remanding for further proceedings. I cannot join, however, in the analysis in Section C of the opinion. I believe that the majority opinion reads too much into *Roberts Oil Co. v. Transamerica Insurance Co.*, 113 N.M. 745, 833 P.2d 222 (1992). In particular, I believe that the law bars recovery by the insured under a theft insurance policy if (1) the policy voids coverage when the insured violates the obligation to respond under oath to questions by the insurer, (2) the insured intentionally violates this obligation with respect to questions relevant to an insurer's investigation of fraud by the insured, and (3) the violation is material. Although the second and third conditions are satisfied here, remand is necessary to determine whether the first condition is satisfied because the complete policy is not included in the record on appeal.

To put the discussion in perspective, I begin by reviewing the pertinent facts. The loss occurred on November 12, 1991. The Insureds submitted the proof of loss on December 18, 1991. Eldin refused to testify about the fraudulent invoices at his examina-

tion under oath on February 3, 1992. Farmers denied the claim on March 2. The Insureds retained a new attorney who sent a letter to Farmers dated March 30, 1992. The letter admitted that Eldin "gave you a list of stolen items that included about $10,000 in invoices from Super Sound that were untrue" but offered to have Eldin submit to a polygraph examination if Farmers would agree that Eldin would be paid for all legitimate losses. On April 15 Farmers rejected the request, noting that because Eldin had admitted that a portion of his claim was based upon false information, his entire claim should be denied. On August 10, 1992 the Insureds' third attorney withdrew the refusal to answer questions. Farmers did not accept the offer to submit to a deposition. Suit was filed on November 24, 1992. On July 26, 1993 Eldin executed an affidavit contending that he was not committing fraud when he submitted the false invoices.

As Farmers pointed out in its brief in district court, there was no reason for it to accept the proposal in the March 30, 1992 letter or to accept the suggestion for a new deposition. It had a right (which is affirmed in the opinion of this Court) to deny the claim in full if Eldin had submitted false invoices with fraudulent intent, and in the March 30 letter the Insureds' attorney had admitted, without offering any extenuating circumstances, that the invoices were false. For all Farmers knew, a polygraph exam or new deposition would be a complete waste of time and money. The Insureds' attorney had already made an admission that relieved Farmers of liability. Not until receipt of Eldin's affidavit in August 1993 did Farmers have any reason to doubt that Eldin had in fact committed fraud. Thus, there was a delay of almost eighteen months between (1) Eldin's refusal to answer questions concerning the invoices and (2) the appearance of any incentive for Farmers to question him or conduct other investigation concerning whether he committed fraud.

I now turn from the facts to the law. I agree with the majority that *Roberts Oil* makes clear that an insurer *may* need to establish substantial prejudice in order to escape liability on the ground that the in-

sured breached an obligation under the policy. *Roberts Oil* does not, however, precisely delineate when substantial prejudice is required and when it is not. The majority opinion in this case recognizes one narrow exception to the substantial-prejudice requirement, permitting the insurer to escape liability under a first-party policy (such as one covering fire and theft losses) when the insured submits a fraudulent claim. I agree with that proposition. But the majority jumps too quickly to the conclusion that *Roberts Oil* requires an insurer to establish substantial prejudice before it can deny a claim because of the insured's failure to answer questions under oath. My analysis of *Roberts Oil* leads to a different conclusion with respect to an intentional refusal to answer questions relevant to an insurer's investigation of fraud by the insured under a theft policy.

In determining whether to require the insurer to prove substantial prejudice, *Roberts Oil* adopts the "approach of focusing on the purpose of the contractual provision at issue." 113 N.M. at 752, 833 P.2d at 229. The important considerations appear to be the insured's reasonable expectations and public policy. Both argue in favor of denying coverage to an insured who commits a material violation of the policy by intentionally refusing to answer under oath questions relevant to an investigation of possible fraud by the insured.

*Roberts Oil* indicated that it would not allow contract provisions to "frustrate 'the consumer's reasonable expectation that coverage will not be defeated on arbitrary procedural grounds.'" 113 N.M. at 752, 833 P.2d at 229. The Court's concern was that insurance policies, as contracts of adhesion, will contain terms that would not be truly bargained for by informed consumers. *See id.* *Roberts Oil* did not say, however, that courts should throw out every provision in an insurance contract. On the contrary, before rejecting a contract provision there should be a good reason to do so, other than simply that rejecting the provision will benefit the particular insured making the particular claim.

Some provisions may be as much in the interests of the insureds (when considered as a class) as the interest of the insurer. Because an insurer's investigating, defending against, and paying fraudulent claims can raise the cost of insurance for all insureds, one would expect a group of financially powerful businesses who are negotiating terms of an insurance contract to accede freely to strict policy provisions that enable the insurance company to investigate a potential fraud more expeditiously and efficiently, at least so long as the policy terms do not impose unreasonable burdens on the insured. After all, air passengers appreciate the convenience of reserved seats and hot meals on their flights, but millions are willing to forego those amenities in return for lower fares. One would likewise expect most businesses seeking insurance coverage for theft losses to agree to strict conditions of cooperation in fraud investigations if premiums would likely be lower as a result. Many business owners, probably most, would view such cooperation as appropriate in any event. This is not to say that courts should read into every first-party insurance policy a provision voiding the policy if the insured refuses to submit to examination under oath when the insurer wishes to investigate fraud. Rather, the point is only that such a policy provision cannot be presumed to violate consumer expectations.

To be sure, the reasonable expectations of consumers might be violated in certain circumstances by forfeiture predicated on failure to answer questions under oath. The violation of the policy provision may, for example, be unintentional. (This appears to have been the circumstance in *Roberts Oil*. The insured did not notify the insurance companies it sued until more than four years after the event leading to the loss. 113 N.M. at 746, 833 P.2d at 223. One may infer that the expenditures made in violation of the policy terms occurred well before the insured even knew that it had coverage under the policies.) Thus, an insured would not expect to forfeit coverage because of refusal to answer irrelevant questions. *Cf. Crowell v. State Farm Fire & Casualty Co.*, 259 Ill. App.3d 456, 197 Ill.Dec. 415, 417, 631 N.E.2d 418, 420 (1994) (uncounselled insured did not understand relevance of questions into his financial background). Nonetheless, there is nothing arbitrary about denying coverage to one who intentionally refuses to answer questions obviously related to the claim when the insurer has a bona fide basis for investigating fraud.

Public policy is also a factor in determining whether to require proof of substantial prejudice. This consideration was fundamental in *Foundation Reserve Insurance Co. v. Esquibel*, 94 N.M. 132, 607 P.2d 1150 (1980). The question in that case was whether the insurer could deny a claim under a liability policy because of the insured's breach of the policy's fraud and cooperation provisions. If voided, the policy could not fund a recovery by an innocent third party injured by the insured. The Court wrote: "The risk-spreading theory of liability should operate to afford to affected members of the public—frequently innocent third persons—the maximum protection possible consonant with fairness to the insuror." 94 N.M. at 134, 607 P.2d at 1152 (internal quotation omitted); *see* 8 John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 4773, at 231 (1981) (liability insurance policies are in part third-party beneficiary contracts, and it is in public interest that injured persons who are free from fault should recover); Robert E. Keeton & Alan I. Widiss, *Insurance Law* § 7.3(b), at 783 (student ed. 1988) (analysis by courts concerning whether cooperation clauses in liability policies have been violated appears to be influenced by public interest in compensating innocent accident victims).

*Roberts Oil* held that the substantial-prejudice requirement of *Foundation Reserve* is not limited to coverage in liability policies (when often an innocent third party injured by the insured is the one who would suffer from forfeiture of coverage), but it did not reject the importance of public policy considerations. On the contrary, the first paragraph of *Roberts Oil* states, "This case, at least as argued by the parties, presents a conflict between basic principles of insurance law and the necessity for prompt remedial action to correct an instance of environmental contamination." 113 N.M. at 745, 833 P.2d at 222. Likewise, the penultimate sentence of the opinion states, "And the court

should weigh the evidence on these points in light of the necessity for, and the public policy favoring, a prompt and effective response to an instance of environmental contamination." *Id.* at 758, 833 P.2d at 235. One of the reasons to require the insurer to establish substantial prejudice in that case was to avoid deterring the insured from taking prompt action to protect the environment.

In contrast to *Foundation Reserve* and *Roberts Oil*, in this case no public policy supports a substantial-prejudice requirement. The only one to benefit from the requirement in a case like this would be the insured making the claim. Nor is there any useful conduct by an insured that would be deterred by failing to recognize a substantial-prejudice requirement. The reverse would be true. Public policy favors strongly encouraging the insured to cooperate in an investigation of fraud. The New Mexico legislature has expressed its concern about insurance fraud on at least two occasions. Legislation in 1984 created the felony of presenting a fraudulent insurance claim. NMSA 1978, § 59A–16–23 (Repl.Pamp.1992). In 1991 the legislature passed the Insurance Fraud Reporting Immunity Act, NMSA 1978, §§ 59A–16A–1 through –4 (Repl. Pamp.1992), which immunizes from liability persons who make good faith reports of insurance fraud.

Admittedly, the importance of cooperating with an investigation of possible fraud is not as great as the importance of not committing fraud. Just because, as the majority agrees, forfeiture of the policy benefits is an appropriate sanction for a fraudulent claim, it does not necessarily follow that forfeiture is an appropriate sanction for intentional refusal to cooperate in an investigation of fraud. Nonetheless, to deter fraud and reduce its financial impact, forfeiture should be permitted as the penalty for refusal to answer under oath questions relevant to a bona fide inquiry about fraud by the insured. Imposition of a requirement that the insurer must prove substantial prejudice would have three harmful consequences: First, it would offer an incentive for non-cooperation by one who commits fraud. When answering relevant

questions would facilitate the insurer's proof of fraud, a defrauding insured's self-interest would counsel refusal to answer unless refusal in itself worked a forfeit. Second, if the insurer must prove prejudice from the refusal, it is likely to incur substantial investigative and legal expenses in the effort. Such expenses are a real cost caused by fraud. Why should the insurer (and potentially its policy holders) incur such costs when there is no legitimate excuse for the insured to refuse to answer relevant questions? Third, because of the difficulty of proving fraud, the insurer may well be unable to establish that the insured's refusal prevented it from proving fraud or obtaining relevant evidence even when the refusal actually had that effect.

Consequently, it should be permissible for a policy to provide that the insured's right to recovery under the policy is forfeited if the insured refuses to respond under oath to questions relevant to the insurer's bona fide inquiry into fraud by the insured. The sole limitation on this proposition should be that the insured's violation of this duty under the policy must be a "material" one. After all, the purpose of the insured's obligation to answer questions under oath is to facilitate the insurer's investigation. If the breach of the obligation is not material—that is, the breach does not create a substantial likelihood that the insurer's investigation will be hindered—the insurer has no cause for complaint. On the other hand, if the breach is substantially likely to hinder the insured's investigation, then consumer expectations and public policy support forfeiture to reduce insurer investigation costs and to deter indefensible conduct that can protect crooks.

The materiality requirement might appear to be just another way of expressing a requirement of substantial prejudice. But materiality depends only on the *potential* for the breach to cause prejudice; it does not require proof (which may often be impossible to come by) that prejudice actually occurred. To show substantial prejudice the insurer would ordinarily need to prove that it would likely have prevailed on the merits or that it actually would have acquired helpful information if the insured had complied with the duty to answer questions under oath. This is

a more demanding standard than *materiality*, which requires only a substantial likelihood that the breach of duty would hamper the insurer's investigation. Hence, I prefer the term *material*, although, as discussed below, some courts appear to use the term *prejudicial* to convey the same standard. *Cf. TSC Industries v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (under securities law "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote").

The law that I would apply to this case finds support in other jurisdictions. The strong majority view is that when an insured makes a claim on a first-party policy, coverage is appropriately denied when the insured refuses to answer relevant questions under oath. *See United States Fidelity & Guar. Co. v. Wigginton*, 964 F.2d 487 (5th Cir.1992) (applying Mississippi law; insurer need not show prejudice); *Pervis v. State Farm Fire & Casualty Co.*, 901 F.2d 944, 946–47 (11th Cir.) (arson suspected; insured invoked privilege against self-incrimination), *cert. denied*, 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990); *Warrilow v. Superior Court*, 142 Ariz. 250, 689 P.2d 193, 195–98 (Ct.App.1984) (questions must be material; privilege against self-incrimination does not protect insured); *Stringer v. Fireman's Fund Ins. Co.*, 622 So.2d 145 (Fla.Dist.Ct.App.) (per curiam), *review denied*, 630 So.2d 1101 (Fla. 1993); *Halcome v. Cincinnati Ins. Co.*, 254 Ga. 742, 334 S.E.2d 155 (1985) (fraud suspected; failure to provide material information); *Standard Mut. Ins. Co. v. Boyd*, 452 N.E.2d 1074 (Ind.Ct.App.1983) (insured claimed no prejudice resulted from refusal); *Watson v. National Sur. Corp.*, 468 N.W.2d 448 (Iowa 1991) (substantial compliance required; belated offer to submit to examination did not constitute compliance); *Fineberg v. State Farm Fire & Casualty Co.*, 113 N.C.App. 545, 438 S.E.2d 754, *review denied*, 336 N.C. 315, 445 S.E.2d 395 (1994). *But see* Allan D. Windt, *Insurance Claims and Disputes* § 3.04, at 86 & Supp. at 46 (yet footnoting the weight of contrary authority). Although it was thought at one time that New York law required the insurer to show prejudice arising from the insured's refusal to answer questions under oath, *see C–Suzanne Beauty Salon v. General Ins. Co.*, 574 F.2d 106, 110–11 (2d Cir.1978), it is now clear that an insured's willful refusal to answer relieves the insurer of any obligation to pay, *see Rosenthal v. Prudential Property & Casualty Co.*, 928 F.2d 493, 494–95 (2d Cir.1991).

A few jurisdictions have stated a substantial-prejudice requirement, but it is unclear how this requirement, as applied by the courts, differs in practical effect from the materiality requirement described above. For example, in Illinois if the insurer "can demonstrate *the existence of a question of fact as to whether it was prejudiced*, the issue becomes one of substantial compliance and is for the jury." *Piro v. Pekin Ins. Co.*, 162 Ill.App.3d 225, 113 Ill.Dec. 220, 223–24, 514 N.E.2d 1231, 1234–35 (1987) (emphasis added); *accord Crowell*, 197 Ill.Dec. at 418, 631 N.E.2d at 421. The prejudice referred to is apparently prejudice to "the insurer's investigation of the facts." *Piro*, 113 Ill.Dec. at 223, 514 N.E.2d at 1234. The requirement that there be a question of fact as to whether the insurer's investigation was prejudiced seems quite similar in application to the requirement that the breach be "material" (by creating a substantial likelihood that the insurer's investigation would be hindered). If the insurer satisfies either the materiality test or the Illinois question-of-fact test, the insured can recover only upon a showing of substantial compliance.

*Wood v. Allstate Insurance Co.*, 21 F.3d 741 (7th Cir.1994), following Indiana case law regarding *liability* insurance policies, required substantial prejudice arising from violation of a cooperation provision in a homeowner's policy. But the only issue of prejudice discussed in the opinion related to the insured's failure to sign in a timely manner a transcript of her examination under oath. *Id.* at 747. Because it is not apparent how such a failure could be material, the case did not call on the court to say anything that would distinguish its concept of prejudice from the concept of materiality.

In *King v. Federal Insurance Co.*, 788 F.Supp. 506 (D.Kan.1992), *aff'd*, 996 F.2d 311

(10th Cir.1993), the court ruled that the insurer must prove that the insured's breach "caused substantial prejudice to either the [insurer's] ability to investigate [the insured's] claim or to defend itself in this action." *Id.* An insurance adjuster, who had reviewed the documents that had not been produced in a timely fashion by the insured, testified that the documents would not have affected the decision to deny the claim. Failure to produce the documents was held to be not prejudicial. Again, it is unclear whether the court's concept of prejudice differs significantly from the meaning of *materiality* expressed in this opinion.

*Marquis v. Farm Family Mutual Insurance Co.,* 628 A.2d 644, 650 (Me.1993), said that the insurer must demonstrate prejudice, but the opinion did not discuss the type of prejudice required, and it appeared to turn primarily on the reasonableness of the insured's request to delay his examination until the close of criminal proceedings, *id.* at 649; *Thompson v. West Virginia Essential Property Insurance Ass'n,* 186 W.Va. 84, 411 S.E.2d 27 (1991), involved a delay of at most a couple of weeks in submitting to an examination under oath. The court applied a substantial-prejudice standard, but the analysis was consistent with what the analysis would be under a materiality standard.

Two decisions in jurisdictions requiring substantial prejudice are particularly instructive. In *Gabor v. State Farm Mutual Automobile Insurance Co.,* 66 Ohio App.3d 141, 583 N.E.2d 1041 (1990), the insurance company suspected arson and requested the insured's state and federal income tax returns for the year before he purchased the burned vehicle. The court, without any further discussion of prejudice, stated, "We hold that the insured's refusal to produce his income tax returns for the year before he purchased the Oldsmobile was a substantial and material breach of his contractual duty to cooperate which clearly *prejudiced the insurer's investigation* into possible motives for arson." *Id.,* 583 N.E.2d at 1044 (emphasis added). Given the court's summary treatment of the issue, one can infer that it found substantial prejudice simply because there was a substantial likelihood that the insurer's investigation was hindered. This view of prejudice is essentially the same as the concept of materiality in this context.

A similar understanding of prejudice is implicit in *Daniel v. Pawtucket Mutual Insurance Co.,* 506 A.2d 1032 (R.I.1986). Despite the insured's argument that the insurer had failed to establish prejudice, *id.* at 1033, the insured was barred from recovery because of her failure to provide an adequate sworn proof of loss and her refusal to give a sworn statement under oath.

The above authority suggests that Farmers might well be entitled to summary judgment in every other jurisdiction in this country, assuming that the terms of the policy provide for forfeiture when an insured refuses to answer questions under oath. The eighteen-month delay caused by Eldin's initial refusal to answer questions establishes that Eldin's refusal was a material violation or, in the terminology of some jurisdictions, prejudiced Farmers' investigation. Both case authority and sound policy would require summary judgment in favor of Farmers in New Mexico as well.

Perhaps the above discussion is of little practical effect. I suspect that upon remand Farmers, with the advantage of a presumption of substantial prejudice, will be able to obtain summary judgment. To rebut the presumption, the Insureds would have a most difficult task of presenting evidence that the eighteen-month delay failed to prevent Farmers from obtaining valuable information. Because recovery by the Insureds is possible only if the phony invoices represented actual merchandise stolen from them (otherwise they are barred by their fraud), they would need to identify who truly sold the merchandise to them and show that at the time Eldin submitted his affidavit disclaiming fraud (1) copies of the true invoices were still in the seller's possession and (2) any persons who would have known of the presence of the merchandise in the Insured's store prior to the theft were still available and had undiminished memories.

Nevertheless, the materiality standard is a sound one. And if it generally leads to the same result as a substantial-prejudice standard coupled with a presumption of substantial prejudice, then the greater ease of application of the materiality standard is just another reason to favor it.